**F. C. DONOVAN, Inc., Plaintiff, Appellant,**

v.

**UNITED STATES of America, Defendant, Appellee.**

No. 5353.

United States Court of Appeals First Circuit.

Heard Oct. 7, 1958.

Decided Nov. 24, 1958.

Walter G. Silcox, Boston, Mass., with whom Richard J. Walsh and Warner, Stackpole, Stetson & Bradlee, Boston, Mass., were on brief, for appellant.

David O. Walter, Atty., Dept. of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., Anthony Julian, U. S. Atty., and Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., were on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This case illustrates the perils of misunderstanding incident to the drafting of a judicial opinion. In 1956 we had before us a tax refund case, Newmarket Mfg. Co. v. United States, 1 Cir., 233 F. 2d 493, involving the carry-back provisions of the 1939 Internal Revenue Code, in which we held that the corporate taxpayer was entitled to carry back a loss suffered in its business operations for the fiscal year ending November 30, 1952, as a deduction against income earned in the same business for the year ending November 30, 1951. We have no doubt at all that the Newmarket case was correctly decided. At 233 F.2d 497, we took occasion to differentiate a decision of the Court of Appeals for the Eighth Circuit in favor of the government in Libson Shops, Inc., v. Koehler, 8 Cir., 1956, 229 F.2d 220. Later, when the Supreme

Court affirmed the judgment of the Court of Appeals for the Eighth Circuit (1957, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924), it seemed to indicate in its opinion that the Newmarket case was different, and all right in its result. At the same time application by the United States for a writ of certiorari to review our judgment in the Newmarket case was denied. 1957, 353 U.S. 983, 77 S.Ct. 1279, 1 L.Ed.2d 1142.

In Newmarket Mfg. Co. v. United States, the government was in the weakest possible position. We stated (233 F. 2d at page 497), "that throughout the whole period in question there was only one single business—the business of manufacture and sale of woven synthetic fibers—which had a profitable year followed by several bad ones." All that had happened was that the corporate domicile of the business had been changed from Massachusetts to Delaware, for reasons wholly unrelated to federal tax consequences, and this change had been effectuated pursuant to a statutory merger under the corporation laws of Massachusetts and Delaware. We pointed out (at page 495) the following:

> "On and after the effective date of the merger, the surviving Delaware corporation had the following characteristics identical with those of the predecessor Massachusetts corporation: The par value of the shares of stock of the surviving corporation was the same as the par value of the shares of stock of the Massachusetts corporation; the number of shares of stock outstanding in the surviving corporation, and the ownership thereof, were exactly the same as the number and ownership of the shares of stock of the Massachusetts corporation; the officers of the surviving Delaware corporation were the same as those of the extinguished Massachusetts corporation; and the new corporation conducted the same business (and no other) in the same places and in the same manner as had the Massachusetts corporation immediately prior to the merger. The corporate purposes stated in the charter of the surviving Delaware corporation were substantially equivalent to the corporate purposes which had been stated in the charter of the Massachusetts corporation."

Notwithstanding all this, the government advanced the dry, technical argument that under the carry-back privileges of § 122(b) (1) (B) of the 1939 Code, as amended, 26 U.S.C.A. § 122(b) (1) (B), these remedial provisions could be invoked only where the same "taxpayer" which had made the earlier gain had suffered the loss in a later year; whereas admittedly the surviving Delaware corporation was not the same "legal entity" as the pre-existing Massachusetts corporation. The government failed to convince us that "the effectuation of this statutory merger, changing the corporate domicile of Newmarket Mfg. Co., defeats the carry-back deduction which would otherwise have been available." (233 F.2d at page 497.) We thought the government's argument put altogether too much weight upon the words "the taxpayer" found in § 122(b) (1) (B); that these words "could not have been intended by the Congress to be words of art requiring the thin distinction between Newmarket Mfg. Co. before and after its incorporation in Delaware." (at page 498) In this connection, we thought it was significant that in the 1954 Internal Revenue Code, 26 U.S.C.A. § 172 when for the first time "the Congress focused sharply on the problem now involved, it decided that a carry-back privilege was not to be lost in consequence of a reorganization that was no more than 'a mere change in identity, form, or place of organization, however effected.' This indeed is not surprising, when it is considered that taxation is an intensely practical matter, which ought to turn upon economic realities rather than upon technical differences of the corporate entity consequent upon the migration of a corporation from one state to another." (*Ibid.*)

Referring again to the carry-back provisions of the 1939 Code, we ventured the following argumentative statement:

"What may be supposed to have been the concern of the Congress, in sanctioning these departures from the general system of a strict annual accounting? There was a desire to bring stability to the tax burden of 'a business with alternating profit and loss.' H.R.Rep.No.855, 76th Cong., 1st Sess. 9–10 (1939). Whose burden? That of an artificial legal entity called a corporation, or that of the human beings doing business behind the corporate facade and who, alone, actually feel the pinch of taxation? When, as here, everything in the business remains the same, except for the change of corporate domicile from Massachusetts to Delaware, the answer as an *a priori* matter seems easy: Income-tax-wise, there is no more reason why the Congress should choose to attach crucial significance to a mere change of corporate domicile than it would to a change of an individual taxpayer's domicile from Massachusetts to Delaware." (at pages 496–497.)

But we had to deal with the government's insistent reliance upon a decision of the Supreme Court in New Colonial Ice Co., Inc., v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; and we took what then seemed to us the easiest way of distinguishing the New Colonial case by remarking: "What is conclusive, we think, is that the New Colonial case did not involve a statutory merger." (233 F.2d at page 498) This distinction was also taken by the Ninth Circuit in E. & J. Gallo Winery v. Commissioner, 9 Cir., 1955, 227 F.2d 699, 702. In the case at bar, where the taxpayer had undergone a reorganization not pursuant to the statutory merger laws of any state, the government has seized upon this statement of ours as requiring the conclusion that the present case must be decided in favor of the government in deference to New Colonial Ice Co., Inc., v. Helvering.

■ For reasons about to be stated, we do not think that this is so.

In addition, we stated in the Newmarket case, what happened to be a fact, that there was only a single business operation throughout the whole period, namely, that of weaving synthetic fibers in the plant at Lowell, Massachusetts. The government argues, therefore, that the Newmarket case is not controlling here, where "more than one business was involved." But we thought we had made it clear enough in the Newmarket case what we took to be of paramount importance, that the ownership and all other practically important attributes of the business which suffered the loss in 1952 and the business which had earned income in the previous year were unchanged. This is also true in the present case. It was in that context that we referred to the congressional desire, in enacting the carry-back privilege, to bring stability to the tax burden of "a business with alternating profit and loss." (233 F.2d at page 497) And we thought that the Congress must have had in mind, in this connection, the burden not of an artificial legal entity called a corporation but "that of the human beings doing business behind the corporate facade and who, alone, actually feel the pinch of taxation". (*Ibid.*)

The relevant facts in the present case are not in dispute. F. C. Donovan, Inc., the plaintiff and appellant, is a Massachusetts corporation, the stock of which was entirely owned by one A. Josephine Donovan all during the period 1945–1948. Until December 31, 1946, F. C. Donovan, Inc., engaged in the business of merchandising leather at wholesale, its corporate purposes being stated to be: "Buying, selling, manufacturing, and otherwise dealing in hides, skins and leather and similar materials and carrying on any business incidental thereto; holding stock in other corporations." Plastic Products Corp. was also incorporated in Massachusetts and until December 31, 1946, was engaged in the business of distributing plastic sheeting. All the stock of Plastic Products Corp. was owned by F. C. Donovan, Inc.

On December 31, 1946, Plastic Products Corp. was merged into its parent corporation, F. C. Donovan, Inc., by the following transaction: F. C. Donovan, Inc., filed articles of amendment with the appropriate state authorities substituting for its original corporate purposes an authorization to deal in plastics of all kinds, in addition to leather and any similar material. By an agreement dated December 31, 1946, and effective as of the close of business on that date, as approved by the boards of directors of both corporations, all the assets of Plastic Products Corp., subject to its liabilities, were transferred to F. C. Donovan, Inc. The latter corporation in return surrendered all its stock in Plastic Products Corp., which stock was retired and canceled.

The foregoing transaction did not technically extinguish the corporate existence of Plastic Products Corp. In fact, sometime in 1947 the name of Plastic Products Corp. was formally changed to Plastro Corporation, which, in turn, was formally dissolved by a decree of the Supreme Judicial Court of Massachusetts (apparently during 1947), pursuant to Ch. 155, § 50A, Mass.G.L., which grants to the Commissioner of Corporations and Taxation of the state the power to apply for the dissolution of any corporation if he "is satisfied" that the corporation has become inactive and "that its dissolution would be in the public interest"; thus such dissolution could not be completely controlled by the stockholders, or, in this case, by the parent corporation, F. C. Donovan, Inc. It is conceded that the foregoing reorganization did not constitute a statutory merger under the laws of Massachusetts. Though no reason appears in the record for the making of this reorganization, it is not asserted that there was any motive to avoid taxes in any way. So far as we can see, no federal tax advantage was thus achieved except perhaps a saving of the two per cent penalty which would have to be paid for the filing of a consolidated return.

From and after December 31, 1946, F. C. Donovan, Inc., engaged in the business of merchandising leather at wholesale and of distributing plastic sheeting. The portions of the enterprise, however, which had theretofore constituted the distinct businesses of F. C. Donovan, Inc., and Plastic Products Corp., were carried on, respectively, by a Leather Division and a Plastic Division of the augmented F. C. Donovan, Inc. The books and records of the latter corporation disclosed the separate income and expenses of each division; those overhead expenses which could not be individually charged were separated by allocation in proportion to sales.

The net income of the two businesses from 1945 to 1948 was as follows:

| Year | F. C. Donovan, Inc. (1945–1946) Leather Division (1947–1948) | Plastic Products Corp. (1945–1946) Plastic Division (1947–1948) | Total |
|---|---|---|---|
| 1945 | $ 38,385.76 | $132,867.86 | $171,253.62 |
| 1946 | 38,112.57 | 589,309.32 | 627,421.79 |
| 1947 | 781.21 | — 83,794.10 | — 83,012.89 |
| 1948 | — 289,900.60 | 71,766.85 | — 218,133.75 |

For the year 1945 F. C. Donovan, Inc., and Plastic Products Corp. filed a consolidated income tax and excess profits tax return. For the year 1946 separate income tax returns were filed by F. C. Donovan, Inc., and by Plastic Products Corp., the parent corporation paying the taxes due on both. For the years 1947 and 1948, F. C. Donovan, Inc., has duly filed its income tax returns.

■ At an earlier date, F. C. Donovan, Inc., made a claim for a net operating loss carry-back from the year 1947, and the Treasury Department allowed the carry-back of the 1947 loss of $83,012.89 to be absorbed as a deduction against the 1945 and 1946 income of F. C. Donovan, Inc., to the extent of that income. A refund based on these deductions has been duly made. In view of the argument by the government in the case at bar, this earlier action by the Commissioner must be taken as a recognition that the augmented F. C. Donovan, Inc., which emerged from the reorganization was the same "taxpayer" which had earned income in a year prior to such reorganization. We may assume that, similarly, if the combined corporation had used the charter of Plastic Products Corp. (even with a changed name), the Commissioner would have allowed all the 1947 and 1948 losses to be applied against the 1945 and 1946 income attributable to Plastic Products Corp.

Later, F. C. Donovan, Inc., claimed a net operating loss carry-back from the year 1947 to the year 1945, as a deduction from the income of $132,867.86 for that year pertaining to Plastic Products Corp. This claim for refund was filed March 15, 1951, and was rejected under date of April 16, 1952, and constituted the first count of the complaint below for a tax refund.

On March 14, 1952, F. C. Donovan, Inc., filed a similar claim for refund based on a net operating loss carry-back from 1948 to 1946. This claim was rejected on August 11, 1953, and constituted the second count of the complaint below. On this appeal the second count has for the most part been abandoned by appellant. However, some argument was addressed to us as to certain adjustments which would require a partial allowance of the claim in the second count if the first count should be decided in favor of appellant. We do not go into these matters now except to note that of course these arguments, so far as consistent with what we have to say on the first count, may be considered and determined by the district court upon remand of the present case.

It is apparent from the facts stated above that the business continued unchanged. Not only was the composite business of leather and plastics distribution unaltered, but indeed both the income and the loss involved were attributable to the same sub-business. The fact that in the year at bar, 1945, consolidated returns were filed underscores the economic business identity.

In another respect also, the present case is similar to Newmarket Mfg. Co. v. United States, supra, in that the reorganization in question was not resorted to for the purpose of achieving a carry-back privilege not otherwise available; rather, the government insists that the result of the reorganization of F. C. Donovan, Inc., prevents it from availing itself of a carry-back privilege which otherwise was pretty clearly available.

If F. C. Donovan, Inc., and Plastics Products Corp. had continued their operations in almost any other way than that which they chose, the claimed net operating loss carry-back would have been allowed:

(a) If there had been no reorganization, but F. C. Donovan, Inc., and Plastic Products Corp. had filed separate returns for the year 1947, all the contentions advanced by F. C. Donovan, Inc., on this appeal would be indisputable. Plastic Products Corp.'s net operating loss for 1947 could have been carried back and offset against the consolidated net income to the extent of Plastic Products Corp.'s contribution to that consolidated net income in 1945. See Treas.Reg. 104 §§ 23.31(b) (2) (iv) (d), (d) (3), 8 F.R. 3289, 3292 (1943), as amended, 10 F.R. 11698 (1945).

(b) Moreover, if there had been no reorganization, but a consolidated return had been filed for F. C. Donovan, Inc., and Plastic Products Corp. in 1947, the consolidated net loss could have been carried back to offset the consolidated net income, re-

gardless of which corporation had created the loss or the income. See Treas.Reg. 104, § 23.31(b) (2) (iv) (b), 8 F.R. 3288 (1943).

(c) Furthermore, it would have been possible for F. C. Donovan, Inc., to have absorbed its wholly owned subsidiary, Plastic Products Corp., by a true statutory merger under the Massachusetts statutes, either under § 46A or § 46B of Ch. 156, Mass.G.L.

Once one gets over the hurdle, as we did in the Newmarket case, that the carry-back privilege is available only where the identical "legal entity" which had earned the income suffered the loss, it would seem a sterile technicality, and wholly unrealistic, to impute to the Congress an intention, in § 122(b) (1) (B) of the 1939 Code, to make the loss carry-back dependent upon the mere form in which the reorganization is cast, that is, whether or not the reorganization was effected by means of a "statutory merger" under state law.

In Libson Shops, Inc., v. Koehler, 1957, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed. 2d 924, the same individuals, and in the same proportions of stock ownership, had incorporated in 1946 sixteen separate corporations to sell women's apparel at retail, at different locations in Missouri and in Illinois. At the same time they had organized under the laws of Missouri another corporation, later called Libson Shops, Inc., whose sole activity was to provide management services for the sixteen sales corporations. Each of these sales corporations was operated individually and filed separate income tax returns. Presumably they could not have filed a consolidated return, since they did not have "a common parent corporation". See I.R.C.1939, § 141(d), 26 U.S. C.A. § 141(d).

In 1949 the sixteen sales corporations were merged into Libson Shops, Inc., under the laws of Missouri and Illinois, new shares of Libson Shops, Inc., being issued, pro rata, in exchange for the stock of the various sales corporations. Following the merger, Libson Shops, Inc., conducted the entire business as a single enterprise. Thus, the effect of the statutory merger was to convert sixteen retail businesses and one managing agency, reporting their incomes separately, into a single enterprise filing one income tax return. It was held by the Supreme Court that Libson Shops, Inc., could not carry over and deduct the pre-merger net operating losses of three of its constituent corporations from the post-merger income of the surviving corporation attributable to the thirteen other businesses. The Court pointed out that, had there been no merger, these three businesses would have had no opportunity to carry over their losses. At 353 U.S. 389–390, 77 S.Ct. 994, it said that it found nothing in the carry-over provisions "which suggests that they should be construed to give a 'windfall' to a taxpayer who happens to have merged with other corporations. The purpose of these provisions is not to give a merged taxpayer a tax advantage over others who have not merged. We conclude that petitioner is not entitled to a carry-over since the income against which the offset is claimed was not produced by substantially the same businesses which incurred the losses."

The government had made the same argument that we rejected in the Newmarket case, namely, that "this statutory privilege is not available unless the corporation claiming it is the same taxable entity as that which sustained the loss" (353 U.S. at page 385, 77 S.Ct. at page 992), relying on New Colonial Ice Co., Inc., v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. On the other hand the taxpayer argued, in reliance on Helvering v. Metropolitan Edison Co., 1939, 306 U.S. 522, 59 S.Ct. 634, 83 L.Ed. 957, "that a corporation resulting from a statutory merger is treated as the same taxable entity as its constituents to whose legal attributes it has succeeded by operation of state law" (353 U.S. at page 386, 77 S.Ct. at page 992), which was the situation in the Libson Shops case. However, the Supreme Court explicitly declined to dis-

cuss this supposed distinction based upon the existence of a "statutory merger", "since an alternative argument made by the Government is dispositive of this case." (353 U.S. at page 386, 77 S.Ct. at page 992) This alternative argument by the government, which the Court found to be persuasive, was that the carry-over privilege "is not available unless there is a continuity of business enterprise" (*ibid.*); that "the prior year's loss can be offset against the current year's income only to the extent that this income is derived from the operation of substantially the same business which produced the loss" (*ibid.*). The Court went on to point out that it had found no indication in the legislative history that the Congress had intended "to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger." (353 U. S. at page 387, 77 S.Ct. at page 993)

In view of the approach taken by the Supreme Court in its most recent consideration of the problem, in Libson Shops, Inc., v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924, we think it is no longer satisfactory to distinguish New Colonial Ice Co., Inc., v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, on the basis of the distinction between a "statutory merger" and other forms of corporate reorganization. We think it is no longer proper to rely upon the metaphorical concept, as was suggested in Helvering v. Metropolitan Edison Co., 1939, 306 U.S. 522, at page 529, 59 S.Ct. 634, at page 638, that in a statutory merger "the corporate personality of the transferor is drowned in that of the transferee." In fact, it is to be noted that in the Metropolitan Edison case there were two types of corporate reorganization involved, one of which was effected as a true statutory merger under Pennsylvania law and the other of which,

although the terms of the Pennsylvania statute had not been complied with, was treated by the Court as a "de facto" merger under which, as a matter of law, the surviving taxpayer was liable for the debts of the transferor. Moreover, the Metropolitan Edison case was concerned with a different problem of taxation—whether an expenditure was a deductible business expense or a nondeductible capital investment—and the Court did not even cite New Colonial Ice Co., Inc., v. Helvering.

We now think that the true explanation of New Colonial Ice Co., Inc., v. Helvering is that it came up under the provisions of the Revenue Act of 1921, which was several years before the Congress introduced into the revenue laws the broad provisions for certain types of reorganizations to be tax-free as to the corporations. It was the obvious and stated purpose of the Congress to encourage businessmen to effectuate certain types of tax-free reorganizations for adequate business reasons, unaffected by a fear of adverse federal tax consequences. See Comment (2) to § 203 of the Revenue Act of 1924 in H.R.Rep.No. 179, 68th Cong., 1st Sess. It is conceded in the case at bar that the type of reorganization here involved, namely, the absorption by a parent corporation of a wholly owned subsidiary, is a tax-free reorganization under the provisions of the law. I.R.C.1939, § 112(b) (6), 26 U.S. C.A. § 112(b) (6). If we should hold, in the present case, that the effectuation of such a reorganization has resulted in cutting out a carry-back privilege which otherwise existed, we would be defeating the essential purposes of the Congress in enacting the provisions for tax-free reorganizations.

A judgment will be entered vacating the judgment of the District Court, and remanding the case to that Court for further proceedings not inconsistent with this opinion.