**MILL RIDGE COAL COMPANY,**
Appellant,
v.
George D. PATTERSON, District Director of Internal Revenue, Appellee.

No. 17392.

United States Court of Appeals
Fifth Circuit.

March 12, 1959.

**714**

Edward M. Selfe, Thomas N. Carruthers, Jr., Birmingham, Ala., for appellant, White, Bradley, Arant, All & Rose, Birmingham, Ala., of counsel.

Kenneth E. Levin, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Dept. of Justice, Washington, D. C., W. L. Longshore, U. S. Atty., M. L. Tanner, Asst. U. S. Atty., Birmingham, Ala., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal, re-presenting here the claim for refund ineffectually urged below, that in paying the deficiency assessed against it for its fiscal year ending August 31, 1955, taxpayer overpaid its taxes, seeks a reversal of the adverse judgment. This claim was, and is, based upon taxpayer's contention that the commissioner erroneously denied it the right to deduct from its income for that year a net operating loss carry-over deduction which was based on a loss sustained by it prior to that year.

On the facts,[1] established by stipulation and undisputed testimony, the dis-

---

1. Taxpayer is a Kentucky corporation organized on Sept. 18, 1947, with an authorized capital stock of 200 shares, all of which was owned by Charles and Prince DeBardeleben. The corporation operated a coal mine in Harlan County, Kentucky, and sold coal from Sept., 1948, until March, 1951.

In March, 1951, taxpayer ceased operating the mine and leased it to the Southern Kentucky Coal Company until February, 1952. From July, 1952, until September, 1952, taxpayer leased the mine to Harcrow Coals, Inc. From September, 1952, until Dec. 31, 1953, taxpayer conducted no business or operations. Taxpayer incurred a net loss during every fiscal year between August 31, 1948, and August 31, 1953.

On September 1, 1952, taxpayer sold all its physical assets, receiving in payment a secured note which it held until Dec. 31, 1953, when it was transferred to Charles and Margaret DeBardeleben. As of December 31, 1953, taxpayer's balance sheet showed zero assets and $297,140.35 worth of liabilities.

In 1949, William E. Tomlinson and R. W. Reynolds began negotiating with the Tennessee Coal and Iron Division of the United States Steel Corporation to purchase fuel oil in Baton Rouge, Louisiana, and transport it by barge and truck to TCI at Birmingham.

On Dec. 3, 1953, TCI agreed to enter such a contract. Tomlinson and Reynolds formed the Bunker Oil Company in November, 1953, through which they intended to carry out the operation. In an effort to raise capital, Tomlinson sought to sell stock to Elliott T. Williams. Williams recollected that Tomlinson approached him in October or November, 1953.

On Dec. 31, 1953, Charles and Prince DeBardeleben sold all their stock in taxpayer and taxpayer's notes, all of which they held, to Williams for $5,475.52. At that time Williams was aware of the pending contract between the Bunker Oil Company and TCI. He testified that the principal reason for buying the corporation was to get the tax benefit of its earlier losses. On Feb. 26, 1954, stock certificates in taxpayer were issued to Tomlinson, Williams, Williams' brother, James B. Morgan, and John N. Harbert III. Tomlinson testified that one of the major reasons he purchased stock in tax-

trict judge, disagreeing with the reason assigned by the commissioner for the disallowance of the deduction, that it was required by Sec. 129(a) I.R.C. (1939), 26 U.S.C.A. § 129(a),[2] nevertheless sustained the determination of the deficiency on the ground that the reasoning of the Supreme Court, in Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924, and the result in that case, required it.[3]

Taxpayer, appealing from the judgment against it, is here presenting a single question for decision. This is:

The taxpayer corporation incurred losses while engaged in the coal mining business. The corporation disposed of all its assets and the

payer was to obtain the tax benefit of its earlier losses.

Thereafter on March 17, 1954, TCI and taxpayer executed a formal contract providing for the transportation and sale of oil by taxpayer to TCI. Taxpayer began to sell fuel oil to TCI on August 31, 1954.

Bunker Oil Company never did any business and was dissolved in 1954.

Taxpayer never engaged in any coal purchasing or selling activities after the DeBardelebens sold their stock in it.

On its income tax return for the fiscal year ended August 31, 1955, taxpayer sought to carry over and deduct the losses it had incurred in the coal business while its shares had been owned by the DeBardelebens. The District Director of Internal Revenue proposed a deficiency which taxpayer paid. Taxpayer's claim for a refund was denied, and taxpayer filed this suit. The District Court directed a verdict for the Director on the issue involved here.

2. "§ 129. Acquisitions made to evade or avoid income of excess profits tax.

"(a) Disallowance of deduction, credit, or allowance.—If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation, or (2) any corporation acquires, on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately prior to such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For the purposes of clauses (1) and (2), control means the ownership of stock possessing at least 50 per centum of the total combined voting power of all classes of stock entitled to vote or at least 50 per centum of the total value of shares of all classes of stock of the corporation.

"(b) Power of Commissioner to allow deduction, etc., in part.—In any case to which subsection (a) is applicable the Commissioner is authorized—

"(1) to allow as a deduction, credit, or allowance any part of any amount disallowed by such subsection, if he determines that such allowance will not result in the evasion of avoidance of Federal income and excess profits tax for which the acquisition was made; or

"(2) to distribute, apportion, or allocate gross income, and distribute, apportion, or allocate the deductions, credits, or allowances the benefit of which was sought to be secured, between or among the corporations, or properties, or parts thereof, involved, and to allow such deductions, credits, or allowances so distributed, apportioned, or allocated, but to give effect to such allowance only to such extent as he determines will not result in the evasion or avoidance of Federal income and excess profits tax for which the acquisition was made; or

"(3) to exercise his powers in part under paragraph (1) and in part under paragraph (2)."

3. Saying in that case:

"We are concerned here with a claim to carry over an operating loss to the immediately succeeding taxable year. The particular provision on which petitioner's case rests is as follows:

"'If for any taxable year beginning after Dec. 31, 1947, and before Jan. 1, 1950, *the taxpayer* has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the three succeeding taxable years * * *.' (Emphasis supplied) § 122(b) (2) (C), 64 Stat. 937, 938, 65 Stat. 505, 26 U.S.C. § 122(b) (2) (C), 26 U.S.C.A. § 122(b) (2) (C).

"The controversy centers on the meaning of 'the taxpayer'. The contentions of the parties require us to decide whether it can be said that petitioner, a combina-

corporate shares were then sold to new owners who engaged in the oil transportation business in the corporate name. The question is whether taxpayer is entitled to carry over the losses previously incurred, in view of the admitted principal purpose of its new shareholders in acquiring the shares to avoid taxes.

Arguing that the district judge was right in holding that Section 129(a) of the 1939 Code and its successor, Sec. 269 (a)(2) of the 1954 Code, 26 U.S.C.A. § 269(a)(2) were not applicable to this case, the taxpayer citing Tax Court decisions, Northways Sec. Co., 23 B.T.A. 532; A. B. & Container Corp., 14 T.C. 842; W A G E, Inc., 19 T.C. 249; and urging upon us: that it has long been established that a single corporate taxpayer may deduct from income earned by it in one type of business in one taxable year a net operating loss sustained by it in another type of business in a prior taxable year; and that a change of business by a single corporate taxpayer does not destroy that corporation's right to carry forward its own net operating losses; insists that this rule was not changed by the decision or the opinion in the Libson case.

Calling attention to the fact that the Supreme Court, in footnote 9, 353 U.S. 390, 77 S.Ct. 994, said that it was not passing upon the instances in which a single corporate taxpayer changes its business, and assuming arguendo that that decision might apply to a single corporate taxpayer under Sec. 122(b)(2) (B) of the 1939 Code, it insists that that decision is not applicable to this case because the deduction here involved was taken by appellant in its taxable year ending in 1955. Distinguishing to its own satisfaction the decision in Coastal Oil Storage Co. v. Commissioner, 4 Cir., 242 F.2d 396, relied on by the commissioner, on the ground that that case involved the creation of a new surtax exemption created by splitting up a profitable business and the deduction was disallowed by ignoring the separate taxable entity of the new subsidiary, appellant insists that its separate corporate taxable entity cannot be ignored here because appellant is a corporation operating an active business entirely separate and apart from its stockholders and as such has an entity and existence entirely separate and apart from them.

The United States, on its part, points as concluding the issue against appellant to the fact that the only, indeed the admitted, purpose of the purchase from the DeBardelebens of the stock of appellant, a corporation, having no assets and heavy losses, was to produce the very mischief aimed at in Sec. 129(a) I.R.C. 1939, and its successor, Sec. 269(a) of the 1954 Code, securing the tax benefits of a deduction of previous losses incurred in a different business and with different

tion of 16 sales businesses, is 'the taxpayer' having the pre-merger losses of three of those businesses." 353 U.S. at page 385, 77 S.Ct. at page 992. the court, after concluding that petitioner was not "the taxpayer", went on to say:

"We do not imply that a question of tax evasion or avoidance is involved. Section 129(a) of the 1939 Code, as amended, does contain provisions which may vitiate a tax deduction that was made possible by the acquisition of corporate property for the 'principal purpose' of tax evasion or avoidance. And that section is inapplicable here since there was no finding that tax evasion or avoidance was the 'principal purpose' of the merger. The fact that § 129(a) is inapplicable does not mean that petitioner is auto-

matically entitled to a carry-over. The availability of this privilege depends on the proper interpretation to be given to the carry-over provisions. We find nothing in those provisions which suggests that they should be construed to give a 'windfall' to a taxpayer who happens to to have merged with other corporations. The purpose of these provisions is not to give a merged taxpayer a tax advantage over others who have not merged. We conclude that petitioner is not entitled to a carry-over since the income against which the offset is claimed was not produced by substantially the same businesses which incurred the losses." Libson Shops, Inc. v. Koehler, 353 U.S. 382, at pages 388–389 and 390, 77 S.Ct. 990, at page 994.

stockholders and management, against the expected great profits to be derived from the new business then being solicited by Bunker corporation for it as the heir apparent.

Pointing, too, to the fact that all of this having been arranged and confected by careful preconcert, Bunker Corporation was dissolved and the taxpayer, refurbished and reborn as Bunker's alter ego and successor, with Bunker's stockholders and Bunker's business prospects, took over and engaged in the business, of transporting and selling oil, a business Bunker was formed to do, it insists that to permit the deduction from the expected and realized profits of the large loss carryover deduction, which was the only thing that made its acquisition by Bunker and its stockholders desirable, would be not only contrary to the construction given the carryover statute in the Libson Shops decision, supra, but also in the teeth of the statutes enacted to prevent this very form of tax avoidance. Emphasizing and reemphasizing that taxpayer's new stockholders had no authentic business purpose in dissolving Bunker and acquiring taxpayer through the purchase of its stock, but only the purpose of accomplishing what Sec. 129(a) of the 1939 Act and Sec. 269(a) of the 1954 Act were enacted to prevent, the abuse of loss carry-over deductions for the purpose of tax avoidance, the United States insists that the allowance of the claimed loss carry-over deduction here as a result of this neatly confected arrangement, having no business purpose and no business result, but only the purpose of avoiding taxes and achieving a tax windfall, would result in an unjust enrichment which the carry-over statute did not intend and the above referred to sections forbid.

 We find ourselves in complete agreement with these views. The language and the legislative history of the enactment of the loss carry-over provisions make it quite clear that congress did not intend thereby to authorize unjust enrichments through windfalls of the kind claimed here. On the contrary, the statute, a remedial one, intended to and did provide amelioration for the drastic effects under particular circumstances of taxing income on an annual basis by allowing a business with fluctuating profits to set off its lean, against its good, years, and it cannot be reasonably contended that in enacting the carry-over provisions, congress contemplated or authorized the trading in, and use of, the loss carry-over deduction involved here. Indeed the facts are so clear, the purpose and results of the actions taken are so obviously in conflict with the meaning and intent of the remedial statute appellant invokes that if, as we do not believe is the case, the transaction at issue here can be said to be within the letter of the statute, it is foreign to its spirit and its clearly expressed overall purpose and intent.

Agreeing with appellee, therefore, that the taxpayer here, as in the Libson case, supra, is not "the taxpayer" within the meaning of 26 U.S.C.A. § 122(b)(2)(C); and that under the undisputed facts and the findings in this case, the allowance of the deduction is forbidden by Sec. 129(a) 1939 Code, we order the judgment

Affirmed.