**COMMISSIONER OF INTERNAL REVENUE, Petitioner**

v.

**VIRGINIA METAL PRODUCTS, INC., Respondent.**

**VIRGINIA METAL PRODUCTS, INC., Petitioner**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 13391, 13392.**

United States Court of Appeals Third Circuit.

Argued April 17, 1961.

Decided May 15, 1961.

James A. Cuddihy, New York City, for taxpayer.

Kenneth E. Levin, Washington, D. C. (Louis F. Oberdorfer and Charles K. Rice, Asst. Attys. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for Commissioner.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the application of the net loss carry-over provisions of Section 122(b) of the 1939 Internal Revenue Code, 26 U.S.C.A.[1] The real heart of the case involves the question whether,

---

1. The statutory text reads:

"(b) Amount of carry-back and carry-over. * * *

"(2) Net operating loss carry-over. * * *

"(B) Loss for taxable year beginning after 1949. If for any taxable year beginning after December 31, 1949, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over * * *".

to get the benefit of these provisions, continuity of the corporate entity is enough.

A corporation named Winfield incurred losses in 1950 and 1951 when it was engaged in the business of making aluminum storm windows and doors and selling and servicing automatic furnace stokers. Its shares were acquired by a corporation which we shall call "Virginia." [2] Virginia was a wholly new ownership. Virginia sold the Winfield assets keeping ownership of the corporate shell.[3] And Winfield never again engaged in the window and automatic stoker business. A new business formerly operated by Virginia was put into its existing shell. The new business made money. Can the Winfield loss incurred before Virginia acquired Winfield be carried over to lessen Virginia's tax under Section 122(b)?

Virginia starts out with a finding of fact which it is very happy to have. The Tax Court found that the transactions outlined above were carried on for a bus-

iness purpose and not with a view to tax avoidance. 33 T.C. 788 (1960). Section 129 of the 1939 Internal Revenue Code, 26 U.S.C.A., therefore, is out of the way, although the Commissioner is a bit grudging in its acknowledgment of the finding.

In spite of the taxpayer's earnest and very able argument, we think Libson Shops, Inc. v. Koehler, 1957, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924, is unmistakably decisive of this case. In that case 16 women's apparel shops, separately incorporated but owned by the same people, were merged with a management corporation to form one corporation called Libson Shops, Inc. Three of these corporations, prior to the merger, showed net operating losses. The taxpayer claimed a deduction of these pre-merger losses as a carry over under Section 122. The Supreme Court said no.

■ The basis of the Court's decision is directly applicable to this case and we think leaves no doubt of what it meant. Mr. Justice Burton, for the

2. The corporate names and transactions indicated in the text are a simplified version. In summary form, the following transactions occurred:

(1) In 1946 the Phoenix Iron Company acquired the capital of Snead and Company and changed the latter's name to Virginia Metal Products Corporation (steel products business).

(2) The Phoenix Iron Company changed its name to Winfield Corporation.

(3) In 1950 New Jersey Stoker Corporation (sales and services of automatic furnace stokers) merged with Insulight Company, Inc. (manufacture of aluminum storm windows and doors) to form Arlite Industries, Inc.

(4) In 1951 Virginia Metal Products Corporation acquired all the capital stock of Arlite Industries, Inc.

(5) In 1952 all the assets of Arlite Industries, Inc. were sold to Charles F. Reuter and Company, Inc.

(6) Later in 1952 the name of the corporate shell of Arlite Industries, Inc. was changed to Winfield Construction Corporation, and the erection part of Virginia Metal Products Corporation's steel products business was transferred to it.

(7) Late in 1952 Chesapeake Industries, Inc. acquired over 95% of the as-

sets of Virginia Metal Products Corporation, thereby also acquired Winfield Construction Corporation.

(8) In 1953 Virginia Metal Products Corporation and Winfield Construction Corporation were merged into a wholly owned subsidiary of Chesapeake Industries, Inc. and renamed Pathe Manufacturing Corporation. Pathe Manufacturing Corporation thereupon changed its name to Virginia Metal Products, Inc.

(9) The net operating losses in issue were sustained by Arlite Industries, Inc. in 1950 and 1951 prior to its acquisition by Virginia Metal Products Corporation. In the text, the "loss" corporation is referred to as Winfield (Winfield Construction Corporation, the name used after its acquisition) and the taxpayer as Virginia (Virginia Metal Products, Inc., the petitioner herein).

3. As originally presented this case involved a question about a sale of the assets because Virginia claimed a loss was an "ordinary and necessary business expense." But the Tax Court held that the taxpayer had failed to prove its case and taxpayer's counsel at the argument conceded that that finding of fact could not be disturbed by us.

Court, pointed out that the government was contending "that the carry-over privilege is not available unless there is a continuity of business enterprise." Id., 353 U.S. at page 386, 77 S.Ct. at page 992. Then the opinion goes on to say that this requirement of continuity of business enterprise accords "with the legislative history of the carry-over and carry-back provisions." The Court cites the legislative history pointing out that the provisions were enacted to "ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year." Ibid. (Footnote omitted.) That case is a stronger case for the taxpayer than the one before us. The shareholders remained the same in these various Libson corporations. The same business was carried on after the merger as before. They all continued to sell women's apparel.

■ Since the Supreme Court said that was insufficient for the application of Section 122, this is an a fortiori case. Here there was no continuity of business and there was no continuity of ownership. The taxpayer's hopeful reliance upon footnote 9 on page 390 of the report of Libson, page 994 of 77 S.Ct., is misplaced. The Supreme Court was simply confining its decision to the facts before it. But the thrust of that decision easily includes such a case as this. This result accords with what other circuits have been saying in applying the Libson decision. Bookwalter v. Hutchens Metal Products, Inc., 8 Cir., 1960, 281 F.2d 174; Mill Ridge Coal Co. v. Patterson, 5 Cir., 264 F.2d 713. (In this case, however, there was no business purpose but a "neatly confected arrangement.") certiorari denied 1959, 361 U.S. 816, 80 S. Ct. 57, 4 L.Ed.2d 63; Patten Fine Pa-

pers, Inc. v. Commissioner, 7 Cir., 1957, 249 F.2d 776.[4]

The decision of the Tax Court will be affirmed in No. 13,392; the decision of the Tax Court will be reversed and the cause remanded for further proceedings not inconsistent with this opinion in No. 13,391.

4. And see, J. G. Dudley Co., Inc., CCH Tax Ct.Current Mem. (61–55) 298 (T.C., Feb. 28, 1961). Cf., F. C. Donovan, Inc. v. United States, 1 Cir., 1958, 261 F.2d 470; Newmarket Mfg. Co. v. United States, 1 Cir., 1956, 233 F.2d 493, certiorari denied, 1957, 353 U.S. 983, 77 S. Ct. 1279, 1 L.Ed.2d 1142.