JULIUS GARFINCKEL & CO., INCORPORATED (SUCCESSOR TO BROOKS BROTHERS, INC., FORMERLY THE A. DE PINNA COMPANY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 94340. Filed August 20, 1963.

*Wallace S. Jones* and *Richard R. Dailey*, for the petitioner.
*Joseph Wilkes*, for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in petitioner's income tax for the taxable year ended July 31, 1953, in the amount of $307,308.13. The issue is whether certain premerger losses can be carried over and offset against certain postmerger income.

### FINDINGS OF FACT

Some of the facts are stipulated and they are found accordingly.

Petitioner is a Virginia corporation with its principal place of business in Washington, D.C. The A. De Pinna Co. was a New York corporation, organized in 1911, and engaged in selling clothing at retail. Its main store was at Fifth Avenue and 52d Street in New York City and prior to January 31, 1950, it had a small store in New Haven, Conn., and seasonal stores at Magnolia, Mass., and Miami Beach, Fla. Brooks Brothers was a New York corporation, organized in 1903, and engaged in selling clothing at retail. Its main store was at 346 Madison Avenue (at 44th Street) in New York City and prior to March of 1946 it had established branch stores in Boston,

Mass., and sales offices in Los Angeles and San Francisco, Calif. Three floors of its New York City store were devoted to manufacturing activities, primarily neckwear and custom-made clothing. It also operated similar manufacturing in Paterson, N.J., and Burlington, Vt.

By May of 1947 petitioner had purchased all of the outstanding common and preferred stock of Brooks Brothers, consisting of 30,435 shares of each class.

Late in its fiscal year ended July 31, 1947, Brooks Brothers was recapitalized, all of its preferred shares being exchanged for an equal number of common shares. As a result the outstanding stock of Brooks Brothers consisted of 60,870 shares of common stock, all of which were owned by the petitioner.

On January 1, 1950, the outstanding stock of the A. De Pinna Co. consisted of 164,902 shares of common stock and 37,549 shares of 6-percent convertible cumulative preferred stock. The latter was convertible into common stock on the basis of two shares of common for each share of preferred. It was redeemable at $12 a share, plus accrued dividends, and was entitled to $11 a share in voluntary liquidation and $10 in involuntary liquidation, plus accrued dividends in either event.

By January 31, 1950, petitioner had purchased 91,870.39 shares of De Pinna common stock and it held an option to purchase 22,879 shares of the 6-percent convertible preferred stock at any time prior to February 1, 1953, for $7.50 per share. Petitioner subsequently acquired more common so that by February 29, 1952, it owned 97,-087.76 shares of the De Pinna common stock.[1]

On February 29, 1952, petitioner caused the two corporations, the A. De Pinna Co. and Brooks Brothers, to merge. The merger was accomplished pursuant to section 86 of the New York stock corporation law. In the merger, the A. De Pinna Co. acquired all of the assets of Brooks Brothers and the latter corporation ceased to exist.

Paragraph 12 of the certificate of consolidation provided: "12. The consolidated corporation is to be one of the constituent corporations and not a new corporation. The A. De Pinna Company is to be the surviving constituent corporation."

Paragraph 4 of the certificate of consolidation provided: "4. The name of the consolidated corporation is Brooks Brothers, Inc."

After February 29, 1952, the outstanding stock of Brooks Brothers, Inc., formerly the A. De Pinna Co. (excluding treasury stock), consisted of (1) 1,382,302 shares of common stock and (2) 37,549 shares of 6-percent convertible cumulative preferred stock. Of these

[1] In the petition it is stated that during January of 1950 petitioner acquired 55.71 percent of the outstanding common stock of the A. De Pinna Co. and by Feb. 29, 1952, petitioner owned 58.88 percent of the outstanding common stock of the A. De Pinna Co.

amounts 1,314,487.76 shares of common stock of the Brooks Brothers, Inc., formerly the A. De Pinna Co., were owned by the petitioner. At the time of the merger the A. De Pinna Co. owed Brooks Brothers $350,000 on open account.

On December 5, 1952, the petitioner exercised its option to acquire 22,879 shares of 6-percent convertible preferred stock of the Brooks Brothers, Inc., formerly the A. De Pinna Co. at $7.50 per share.

After the merger the stores previously operated by the two corporations were operated by Brooks Brothers, Inc. (formerly the A. De Pinna Co.), as divisions: The A. De Pinna Division and Brooks Brothers Division.

The net income of Brooks Brothers for the taxable years ended July 31, 1950, July 31, 1951, and February 29, 1952, was $552,762.73, $505.406.44, and $349,800.91, respectively. The earned surplus of Brooks Brothers at February 29, 1952, was $1,888,917.89.

For its taxable years ended July 31, 1952, July 31, 1953, and July 31, 1954, the following schedule shows the net income and loss of Brooks Brothers, Inc. (formerly the A. De Pinna Co.), by division, before consideration of net operating loss deduction:

| Year | Total | Brooks Brothers Division | De Pinna Division | Unallocated "Headquarters" Expenses |
|------|-------|--------------------------|-------------------|--------------------------------------|
| July 31, 1952 | ($71,087.01) | $296,727.31 | ($325,626.82) | ($42,187.50) |
| July 31, 1953 | 638,837.75 | 1,020,382.58 | (275,211.50) | (106,333.33) |
| July 31, 1954 | 774,270.60 | 1,145,258.27 | (262,605.73) | (108,381.94) |

Prior to the merger and prior to petitioner acquiring control of the A. De Pinna Co. in 1950, the latter corporation had reported its income on a fiscal year ending January 31.[2] It changed to a fiscal year ending July 31 and reported on its Federal income tax returns net operating losses in the following amounts for the periods indicated:

Period: | Net operating loss

Feb. 1, 1950 to July 31, 1950 _____ $208,903.27

Aug. 1, 1950 to July 31, 1951 _____ 310,851.66

Aug. 1, 1951 to July 31, 1952 _____ 71,087.01

The Federal income tax return of Brooks Brothers, Inc. (formerly the A. De Pinna Co.), for its taxable year ending July 31, 1953, was timely filed with the district director of internal revenue, Upper Manhattan district, New York, N.Y. On said tax return the said corporation carried over and deducted its prior net operating losses in the aggregate amount of $586,687.78. The derivation of that deduction was set forth on a schedule attached to such return and the computation is not disputed.

[2] Reporting for the periods ending Jan. 31, 1949 and 1950, a gain of $190,000 and a net loss of $17,539.06, respectively.

The statutory notice of deficiency which was issued to "Brooks Brothers, Inc. formerly The A. De Pinna Company," determined a deficiency in the amount of $307,308.13 for the taxable year ending July 31, 1953, as a result of uncontested adjustments and of the disallowance of the net operating loss carryovers.

On January 31, 1957, Brooks Brothers, Inc., formerly the A. De Pinna Co., was consolidated and merged under New York and Virginia laws into petitioner. It is admitted that as a result of said merger petitioner is liable for all debts of Brooks Brothers, Inc., formerly the A. De Pinna Co., including any portion of the deficiency herein which may finally be determined to be due.

### OPINION

A brief summary of the essential facts will, we feel, serve to point up the issue. Brooks Brothers and the A. De Pinna Co. were two New York corporations engaged in operating clothing stores in New York City and elsewhere. Petitioner, a Virginia corporation operating clothing stores in Washington, D.C., and elsewhere, acquired all of the stock of Brooks Brothers and a controlling interest in the A. De Pinna Co. Both corporations continued to file separate returns. From the date petitioner acquired control of the A. De Pinna Co. (in January of 1950) until February 29, 1952, the A. De Pinna Co. had acquired almost $600,000 in losses. Brooks Brothers continued to make money during said years. On the above date the A. De Pinna Co. acquired by consolidation under New York law all of the assets of Brooks Brothers and Brooks Brothers ceased to exist as a corporation. The A. De Pinna Co. then changed its name to Brooks Brothers, Inc., and it operated the stores it had previously operated under the De Pinna Division of its business, and the stores previously operated by Brooks Brothers under the Brooks Brothers Division of its business. We will continue to call the postmerger corporation the consolidated corporation, though it is the former De Pinna corporation with its name changed to Brooks Brothers, Inc. The De Pinna Division of the consolidated corporation continued to lose money and the Brooks Brothers Division continued to make money. In its 1953 income tax return it carried over and deducted its prior net operating losses in the amount of $586,687.78 which respondent disallowed as not "allowable under any of the sections of the Internal Revenue Code." In 1957 the consolidated corporation was merged into petitioner so that petitioner is primarily liable for its debts, including any portion of its income tax determined to be due herein.

Section 122 (b) (2) (C) provides, in part:

If for any taxable year * * * the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the five succeeding taxable years * * *

The single issue is whether the consolidated corporation was "the taxpayer" within the interpretation of the above statute in *Libson Shops, Inc.* v. *Koehler*, 353 U.S. 382 (1957).[3]

The facts in *Libson Shops, Inc., supra*, are almost identical with the facts here. In *Libson Shops* there were 17 corporations which were all under common control and filing separate income tax returns. Sixteen of them, which were each operating a clothing store, merged into the 17th which had been engaged in providing management services for the other 16 corporations. At the time of the merger three of the constituent corporations had net operating losses. In its income tax return for the year following the merger the consolidated corporation sought, under the above statute, deductions for the net operating losses of the three constituent corporations. After the merger the stores were operated as retail units of the consolidated corporation and the same three stores continued to have losses. The Court held the legislative history of section 122 shows that "Congress primarily was concerned with the fluctuating income of a single business." The opinion states that the statute, rightly construed in the light of its legislative history, means the carryover privilege is not available unless there is "a continuity of business enterprise," the opinion stating:

> The requirement of a continuity of business enterprise as applied to this case is in accord with the legislative history of the carry-over and carry-back provisions. Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year.[5] There is, however, no indication in their legislative history that these provisions were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger. * * * [Footnote 5 omitted.]

The opinion emphasizes that:

> The availability of this privilege depends on the proper interpretation to be given to the carry-over provisions. We find nothing in those provisions which suggest that they should be construed to give a "windfall" to a taxpayer who happens to have merged with other corporations. The purpose of these provisions is not to give a merged taxpayer a tax advantage over others who have not merged. * * *

The Court in *Lisbon* concluded that the petitioner in *Lisbon* was not entitled to a carryover "since the income against which the offset is claimed was not produced by substantially the same business which incurred the losses."

---

[3] Respondent expressly disclaimed any reliance on section 129, I.R.C. 1939, a provision disallowing certain loss deductions following certain acquisitions where the principal purpose was evasion or avoidance of Federal income tax.

Petitioner argues *Libson Shops* is not applicable because here the loss corporation survived the merger and it is only seeking to carry forward its own premerger losses.

It is true that in footnote 9 of *Libson* it is stated that the Court is not passing upon the "*single*" corporation situation: Where a single corporation "changed the character of its business and the taxable income of one of its enterprises was reduced by the deductions or credits of another." However, in many cases decided by this and other courts since the decision in *Libson Shops*, it has been held the doctrine of *Libson Shops* prevents the carryover even though it is the loss corporation that is seeking to carry over its own premerger or preacquisition loss. See *Mill Ridge Coal Co.* v. *Patterson*, 264 F. 2d 713; *Willingham* v. *United States*, 289 F. 2d 283; *Commissioner* v. *Virginia Metal Products, Inc.*, 290 F. 2d 675, reversing 33 T.C. 788; *J. G. Dudley Co.*, 36 T.C. 1122, affd. 298 F. 2d 750; *Huyler's*, 38 T.C. 773; *Norden-Ketay Corporation* v. *Commissioner*, 319 F. 2d 902, affirming a Memorandum Opinion of this Court.

We had occasion to review most of these cases in our recent opinion in *Huyler's* and no useful purpose would be served by reviewing them again. It is enough to say that they all hold the requirement of continuity of business enterprise, announced in *Libson Shops*, must be met before a petitioner can utilize its claimed loss carryover.

In *J. G. Dudley Co.*, *supra*, where there was much the same factual difference with *Libson* as is here present, i.e., the loss corporation continued and sought to utilize its own loss carryovers, we held this no bar to the application of the reasoning of *Libson Shops*: "Nevertheless, we think the Supreme Court in *Libson* was looking beyond legal niceties and was persuaded by the substance of the transaction before it." (36 T.C. at 1126).

When there is common control of merging corporations such as was present in *Libson*, and is present here, the naming of the survivor is of no consequence. In the instant case the president of petitioner, who was also president of De Pinna, and who handled the merger transaction for petitioner, testified: "There were really only two practical ways it [the merger] could have been done. One was to merge Brooks into De Pinna. One was to merge De Pinna into Brooks."

He went on to point out it was simpler to merge Brooks into De Pinna because petitioner did not own all of De Pinna stock and it would have required some financing if De Pinna was to be extinguished. He was frank enough to add: "I certainly was not anxious to borrow any additional money to merge De Pinna into Brooks, especially since, if I did it, we would lose the carry forward."

To hold as petitioner contends would destroy the effect of *Libson Shops* for any merger of commonly controlled corporations. Generally

speaking, it would be nothing more than a technical maneuver to cast the loss corporation in the role of survivor. *Libson* emphasizes that the carryover statutes must be interpreted as requiring the income against which the offset is claimed must be substantially the same business that incurred the losses. These statutes are not to be construed, in the language of *Libson*, "to give a 'windfall' to a taxpayer who happens to have merged with other corporations."

Petitioner seeks to distinguish the cited cases interpreting the *Libson Shops* opinion on the ground that they involve such situations as "shell" corporations with accumulated losses acquiring or merging with new successful corporations, or there is a complete change in the corporate activity which produced the losses and gains, or there were radical changes in the ownership or capital structure of the business between the loss and gain years. Petitioner argues that none of those factors are present here: No shell corporation, no change from the clothing business, and no change in stockownership. Since the question is whether the reasoning of *Libson Shops* is to be applied, it is pertinent to point out none of these factors was present in *Libson Shops*.

It is true the factors mentioned above are often discussed in the opinions holding application of the *Libson Shops* reasoning prevents the carryover. Such discussions are warranted under the factual settings of those cases upon the basic issue of whether the facts show the requirement of a continuity of business enterprise has been met. The courts are merely taking what seems to be the easiest way of showing that lack of continuity exists.

Where there is a radical change in business or ownership, the lack of continuity of business enterprise is glaring. (See *Huyler's* where losses from candymaking and restaurant business were claimed as offsets against metal-manufacturing income.) In *Commissioner* v. *Virginia Metal Products, Inc.*, *supra*, the court pointed out no change in type of business or ownership was present in *Libson* but commented where, as in that case, such factors were present "this is an a fortiori case." The lack of business continuity is just as obvious whenever the controller of the merger has one constituent doing a separate business contribute its loss and another doing a separate business of the same type contribute its earnings. The cited cases since *Libson* are merely to show that the courts have never held that the fact that the loss corporation survives to claim the carryover presents any bar to the application of the reasoning of *Libson*.

Petitioner cites *Kolker Bros., Inc.*, 35 T.C. 299, and *F. C. Donovan, Inc.* v. *United States*, 261 F. 2d 470. *Kolker Bros., Inc.*, is distinguishable on the facts. There a corporation engaged in retail grocery and liquor business purchased for cash and in an arm's-length transaction

all of the assets of a hotel food-supply business for some $77,000. It operated both businesses for some months and then sold its retail food-supply business for some $28,000. It was allowed to carry over its net operating losses from the operation of its retail grocery and liquor business. The opinion holds the purchase was for legitimate business purposes with no aim or idea of obtaining a tax windfall. The most petitioner could argue for this case as authority for its position here is that some of the language there used to distinguish that case from *Libson Shops* might be said to be at variance with views expressed in a number of our later cases, such as *Dudley* and *Huyler's*. At any rate, the facts are so different in the *Kolker* case from the facts here that the holding in that case furnishes no authority for petitioner's position here. The instant case is not the case of the expansion of a losing business in a search for a new profitable venture. The moving party here was petitioner who controlled the movements of both business corporations. Combining the two into one is not expansion.

Petitioner also relies upon certain language it finds in *F. C. Donovan, Inc.* This case is also clearly distinguishable on the facts. There a corporation, engaged in leather wholesale business, acquired the assets, and assumed the liabilities of its plastic products subsidiary and thereafter operated its leather and plastic business in separate divisions. A consolidated return had been filed for some of the years and the court held the facts showed a composite business of leather and plastics with the same subbusiness having both the losses and gains. The court held the merger did not operate to cut off a carryback privilege that would have otherwise existed. The language in the opinion that petitioner fastens upon as authority for his position here is the comment made with respect to the Government's allowance of a refund claim for an earlier year. The court commented that this earlier action must be taken as a recognition by the Commissioner that the corporation that emerged from the reorganization (the parent leather company with assets augmented by plastic company) was the same taxpayer that had earned the income prior to reorganization. It is enough to say the holding in the *Donovan* case furnishes no authority for petitioner here.

We conclude *Libson Shops* is applicable. The fact that the consolidated corporation which is the loss corporation survived the merger is a factual immateriality that does not render *Libson Shops* or the cited cases that have interpreted and applied *Libson Shops* inapplicable. The reasoning of *Libson Shops* prevents the carryover here. The income which consolidated corporation sought to offset with its losses was not produced by substantially the same business that incurred the losses.

*Decision will be entered under Rule 50.*