OLD NATIONAL BANK IN EVANS-VILLE, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 12220.

United States Court of Appeals
Seventh Circuit.
June 19, 1958.

---

Harold R. Burnstein, Chicago, Ill., John E. Early, Evansville, Ind., John W. Hughes, John E. Hughes, Chicago, Ill., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Grant W. Wiprud, Lee A. Jackson, Harry Baum, Attys., Department of Justice, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and MAJOR and HASTINGS, Circuit Judges.

HASTINGS, Circuit Judge.

Petitioner, Old National Bank in Evansville (taxpayer), seeks review of a decision of the Tax Court of the United States sustaining a determination by the Commissioner of Internal Revenue of deficiencies in taxpayer's income and excess profits taxes for the calendar years 1951 and 1952 in the amounts of $9,079.40 and $2,391.96, respectively. This appeal is from two of three issues determined by the Tax Court, which heard the case on a stipulation of facts and exhibits, without oral testimony. The facts being stipulated the only issues in dispute are those of law.

Basic to a determination of the first issue are the following facts: Taxpayer was organized August 16, 1923 under the laws of United States and was engaged in the general banking business in Evansville, Indiana. Franklin Bank and Trust Company (Franklin Bank) was organized to do a banking business in the same city on February 21, 1934. By an agreement effective May 1, 1951, Franklin Bank was consolidated and combined with, and under the charter of, taxpayer pursuant to 12 U.S.C.A. § 34a. On May 1, 1951, the date of the consolidation, Franklin Bank had an unused excess profits credit of $9,286.72. From May 1, 1951 to December 31, 1951, the earnings of taxpayer attributable to the operations in the location formerly used by Franklin Bank were $51,070.35. In

computing its excess profits tax for the year 1951, taxpayer consolidated its base period earnings with that of Franklin Bank in order to determine its normal earnings. Taxpayer claims it was entitled to carry over and deduct the unused excess profits credit of Franklin Bank. The Tax Court, in sustaining the Commissioner's determination, held that taxpayer did not succeed to the pre-consolidation unused excess profits credit of Franklin Bank, and assessed a deficiency accordingly.

The controlling statutory provision is 26 U.S.C.A. Excess Profits Taxes, § 432 (c) (2) (1939 I.R.C.), which provides in part:

> "If for any taxable year ending after June 30, 1950, *the taxpayer* has an unused excess profits credit, such unused excess profits credit shall be an unused excess profits credit carryover for each of the five succeeding taxable years, * * *". (Our emphasis.)

The Commissioner contends that the only "taxpayer" authorized to carry over the unused credit of a preceding taxable year is "the" taxpayer who originally became entitled to the credit, and that where separate taxpayers with separate businesses are consolidated, the post-consolidation business is not substantially the same business as that previously conducted by any one component separately, or even by all the components collectively. Applying this to the facts in the case at bar, the Commissioner urges that Franklin Bank and taxpayer constituted separate taxpayers prior to May 1, 1951; that Franklin Bank became entitled to the unused excess profits credit in question as a result of its separate banking operations during its last taxable period as a separate taxpayer; that as a result of its consolidation with taxpayer on May 1, 1951, a banking enterprise was created which had no pre-consolidation counterpart, and that, hence, there was not the required continuity of business which would entitle taxpayer to carry over the unused credit of Franklin Bank. In short, the Commissioner maintains that taxpayer's business is not substantially the same business as that conducted by Franklin Bank prior to the consolidation, and that taxpayer is not the same "taxpayer" as Franklin Bank but a different corporate entity.

Taxpayer contends that there was, in effect, a statutory *merger* of the two banks[1] which left taxpayer as the continuing corporation and as such the "taxpayer" within the meaning of Section 432(c) (2) and thus entitled to the benefit of the unused credit of its constituent which is an integral part of the continuing corporation. It further points out that Franklin Bank produced the unused credit and that the continuing business at the Franklin Bank location produced the income toward which the credit is sought to be applied. Thus, if there had been no merger, Franklin Bank could have used the credit carry-over, and, consequently, there is no resulting tax advantage or "windfall."

---

1. Taxpayer and Franklin Bank were consolidated under 12 U.S.C.A. § 34a, which reads in part as follows:

"* * * Upon such consolidation, * * * the corporate existence of each of the constituent banks * * * shall be *merged into and continued in the consolidated national banking association and the consolidated association shall be deemed to be the same corporation as each of the constituent institutions.* All the rights, franchises, and interests of each of such constituent banks * * * in and to every species of property, real, personal and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such consolidated national banking association without any deed or other transfer; and such consolidated national banking association, by virtue of such consolidation and without any order or other action on the part of any court or otherwise, shall hold and enjoy the same and all rights of property, franchises, and interests, * * * in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any such constituent institution at the time of such consolidation * * *." (Our emphasis.)

The Tax Court predicated its affirmance of the Commissioner in the instant case on Libson Shops, Inc., v. Koehler, 1957, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924. That case involved a question of *net operating loss deduction carry-over* under 26 U.S.C.A. § 122(b) (2) (C) (1939 I.R.C.) which provided in part as follows:

"If for any taxable year beginning after December 31, 1947, and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the three succeeding taxable years * * *."

In Libson the taxpayer was a corporation which resulted from the merger of 17 separate incorporated businesses which had filed separate income tax returns prior to the merger. Three of the corporations showed net operating losses both *before and after* the merger. Following the merger the taxpayer conducted the entire business as a single enterprise and sought to carry over and deduct the pre-merger net operating losses of the constituent corporations from the post-merger income attributable to *the other businesses*. The Supreme Court held that this was not permissible. The Court stated that the controversy centered on the meaning of the phrase "the taxpayer" in Section 122(b) (2) (C), and that the contentions of the parties required it to decide "whether it can be said that petitioner, a combination of 16 sales businesses, is 'the taxpayer' having the pre-merger losses of three of those businesses." Id., 353 U.S. at page 385, 77 S.Ct. at page 992.

One of the issues presented in the Libson case was whether the taxpayer claiming the deduction was the same taxable entity as that which sustained the loss. The government, relying on New Colonial Ice Co., Inc., v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, argued that separately chartered corporations are not the same taxable entity. The taxpayer, citing Newmarket Manufacturing Company v. United States, 1 Cir., 1956, 233 F.2d 493; E.

& J. Gallo Winery v. Commissioner, 9 Cir., 1955, 227 F.2d 699; Stanton Brewery, Inc., v. Commissioner, 2 Cir., 1949, 176 F.2d 573; and Koppers Company v. United States, 1955, 134 F.Supp. 290, 133 Ct.Cl. 22, contended that a corporation resulting from a statutory merger is treated as the same taxable entity as its constituents to whose legal attributes it has succeeded by operation of state law. However, it is significant to note that the Supreme Court found it "unnecessary" to discuss this issue and disposed of the case on an alternative argument made by the government that there was no continuity of business enterprise and "that the prior year's loss can be offset against the current year's income only to the extent that this income is derived from the operation of substantially the same business which produced the loss", and that "[o]nly to that extent is the same 'taxpayer' involved." Libson Shops, Inc., v. Koehler, supra, 353 U.S. at page 386, 77 S.Ct. at page 993. The court resolved this issue in favor of the government, saying: "We conclude that petitioner is not entitled to a carry-over since *the income against which the offset is claimed was not produced by substantially the same businesses which incurred the losses*." (Our emphasis.) Id., 353 U.S. at page 390, 77 S.Ct. at page 994.

Taxpayer cites Stanton Brewery, Inc., v. Commissioner, 2 Cir., 1949, 176 F.2d 573, and E. & J. Gallo Winery v. Commissioner, 9 Cir., 1955, 227 F.2d 699, as two cases involving the allowance of unused excess profits credit carry-over following a corporate merger. In the Stanton case, the taxpayer was a corporation which resulted from a merger under New York law of an operating company and a holding company and which took the name of the operating company. The Court of Appeals for the Second Circuit held that the "resulting corporation" must be regarded "as the union of component corporations into an all-embracing whole which absorbs the rights and privileges, as well as the obligations, of its constituents," Stanton Brewery, Inc., v. Commissioner, supra, 176 F.2d at page

575, and as such entitled to the unused excess profits credit carry-overs of its component corporations. The court stated further that this is a reasonable interpretation of the statute and carries out its evident purpose, "since it accords the privileges of the carry-over provisions to what is essentially a continuing enterprise, entitled to all their benefits in ameliorating otherwise harsh tax consequences of fluctuating profits or expanding business." Id., 176 F.2d at page 577. The Supreme Court in Libson, supra, 353 U.S. at page 387, 77 S.Ct. at page 993, commented on Stanton as stressing the fact that the merging corporations carried on a *continuing enterprise* and quoted most of the preceding language from Stanton.

In the Gallo case, supra, the Court of Appeals for the Ninth Circuit gave approval to Stanton Brewery, Inc., v. Commissioner, supra, and considered in detail many of the cases cited by the parties here. There, two corporations merged pursuant to California law and the court held that taxpayer, the resulting or "acquiring corporation", was entitled to the carryover of the unused excess profits tax credit of its now component part (the submerged corporation) against taxpayer's excess profits tax after the merger. In Libson, the Supreme Court noted that this case was inconclusive of the issue determined in Libson since the Gallo opinion did not disclose whether a continuing enterprise was involved.

In Koppers Company v. United States, 1955, 134 F.Supp. 290, 133 Ct.Cl. 22, the Court of Claims followed Stanton Brewery, Inc., v. Commissioner, supra, holding that "the surviving corporation in a statutory merger represents the continuation of a business that was operated before in the form of its constituents", (id., 134 F.Supp. at page 295) and that an unused excess profits credit for the first taxable period of a surviving corporation can be employed as an unused excess profits credit carry-back to reduce the consolidated excess profits net income of the corporations which were merged. The Supreme Court in Libson noted that the Koppers case involved a situation in which the corporation resulting from the merger carried on essentially the same taxable enterprise as before since the merged corporations had been filing consolidated tax returns.

It is to be seen that in Stanton, Gallo and Koppers, supra, effect was given to corporate mergers under the particular state laws applicable, and we find nothing in Libson giving disapproval to these holdings. Here we find an even stronger parallel in that the consolidation or merger (we agree with the government that "it is immaterial which label be put upon it") of taxpayer and Franklin Bank was under authorization of the National Banking Act, 12 U.S.C.A. § 34a. Neither the Tax Court nor the government in its brief in this case make any reference to this federal statute and its possible effect on this instant controversy. We do not think it can be ignored, but, on the contrary, we believe it is one of the controlling factors. Congress meant just what is said and it is clear what result it intended in using the words: "Upon such a consolidation * * * the corporate existence of each * * * shall be *merged into and continued* in the consolidated national banking association and *the consolidated association shall be deemed to be the same as each of the constituent institutions* * * *." United States v. Northwestern National Bank & Trust Company of Minneapolis, 8 Cir., 1943, 137 F.2d 761, 763.

The banking business of Franklin Bank was continued by taxpayer in the same location after the consolidation; Franklin Bank had the unused excess profits credit at the time of the merger; and taxpayer applied this credit to its earnings after the merger attributable to its operations in the Franklin Bank location. Furthermore, there is no question that but for the merger Franklin Bank would have had the opportunity to carry over its unused excess profits credit. We conclude that, under the cases here considered and the federal statute authorizing the consolidation of banks, there was a continuation of the corporate identity

and the corporate business of Franklin Bank into the surviving taxpayer banking corporation.

■ We hold, therefore, that the Tax Court erred in denying taxpayer the unused excess profits credit carry-over of Franklin Bank on May 1, 1951 on its own excess profits tax for 1951, and in assessing a deficiency against taxpayer by reason thereof. In so holding, we do no violence to and see no conflict with Libson Shops, Inc., v. Koehler, supra; New Colonial Ice Co., Inc., v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, and Patten Fine Papers, Inc., v. Commissioner, 7 Cir., 1957, 249 F.2d 776, so strongly relied upon by respondent.

The second issue on this appeal is whether the Tax Court erred in ruling that taxpayer could *not* include the base period capital additions of North Side in computing its 1951 and 1952 excess profits credit. Basic to a determination of this issue are the following facts: The North Side Bank (North Side) was organized on May 1, 1932 to do a banking business in Evansville, Indiana. By an agreement effective August 16, 1950, North Side was consolidated and combined with, and under the charter of, taxpayer pursuant to 12 U.S.C.A. § 34a. Prior to the consolidation North Side computed its excess profits credit under the *growth formula* provided by Section 435(e) of the 1939 Code, while taxpayer computed its excess profits credit under the *general average formula* provided by Section 435(d). In its 1951 and 1952 excess profits tax returns, taxpayer utilized the base period capital additions of North Side in computing its excess profits credit.

Section 435 provides alternative methods for the computation of the excess profits credit based on income. Subsection (a) (1) (B) provides in substance that if the taxpayer computes its average base period net income under subsection (d) (the general average formula), 12% of its base period capital addition, *computed under subsection (f)*, shall be added to its excess profits credit. *There is no comparable provision* with respect to subsection (e) (the growth formula). Thus, respondent contends and the Tax Court so held, only taxpayers utilizing the general average formula are authorized to include their base period capital additions in computing their excess profits credit.

However, since we have a statutory merger or consolidation of corporations, Section 435(a) (3) comes into play with a provision that: "For the computation of the excess profits credit based on income in the case of certain reorganizations, see part II of this subchapter * * *." The parties agree that the consolidation of North Side and taxpayer was a transaction covered by Part II. The definition of taxpayer as the "acquiring corporation" and North Side as the "component corporation" is to be found in Sections 461(a) (3) and (4) and (b) (3) and (4) of the 1939 Code. Section 462 governs the manner in which the earnings experience of consolidating corporations may be combined in computing the average base period net income from which the excess profits credit is derived. The parties appear to further agree that the applicable provision of Section 462 is subsection (c) (1) (C) prescribing the "Use by acquiring corporation of alternative average base period net income based on growth provided for in section 435(e)," which here, as respondent points out in its brief, would permit "taxpayer to combine its earnings experience with that of North Side, in the manner and to the extent there specified, even though North Side had utilized the growth formula prior to consolidation" and taxpayer "had utilized the general average formula."

Section 462(c) (1) (C) provides in part that:

"* * * where the transaction occurred on or after July 1, 1950, the monthly excess profits net income of the corporation entitled to the benefits of section 435(e) for any month of the acquiring corporation's base period shall be, for the purposes of the recomputation provided for in section 462(b), onc-

twelfth of the average base period net income to which such corporation was entitled under section 435 (e), and such monthly excess profits net income shall be in lieu of the monthly excess profits net income determined under paragraphs (1) and (2) of section 462(b)."

We agree with respondent's analysis that Section 462(b) in the above quotation governs the method of recomputing the excess profits net income of the acquiring corporation, and that, in effect, Section 462(c) (1) (C) allows taxpayer to take into the recomputation under Section 462(b) one-twelfth of the "average base period net income to which such corporation (North Side) was entitled under section 435(e) * * *", and that subsection (c) (1) (C) does not allow taxpayer to utilize the base period capital additions of North Side.

Taxpayer sought to use the base period capital additions of North Side, its component corporation, in computing its credit under the average income method, under Section 464, which provides in part as follows:

*"For the purposes of section 435 (f),* if the transaction which constitutes the taxpayer an acquiring corporation occurred during or after the beginning of the second taxable year preceding the first taxable year of the acquiring corporation under this subchapter, and the acquiring corporation's average base period net income is computed by application of this part, the following rules shall apply in computing the base period capital addition of such acquiring corporation:

"(a) In the case of a transaction, other than a transaction described in section 461(a) (1) (E), which—

"(1) occurred during or after the first taxable year of the acquiring

corporation under this subchapter, *for the purposes of section 435(f),* the base period capital addition of the acquiring corporation for the taxable year in which the transaction occurred shall be the sum of * * *." (Our emphasis.)

We accept the reasoning of the Tax Court in disposing of this issue as stated at the conclusion of its opinion [28 T.C. 1075]:

"It is obvious that these adjustments for base period capital additions are to be made for 'the purposes of section 435(f).' Section 435(f) outlines the method of computing capital additions in the base period. Such capital additions, as pointed out above, enter into the computation of excess profits credit under the average income method, but do not enter into the computation of the credit based on growth which in reality is an alternative method. There is no reference in section 464(a) (1) to section 435(e). We agree with the respondent that it would be inconsistent to allow a taxpayer, computing its credit under the average income method, to use the base period capital additions of a taxpayer which has chosen the benefits of the growth formula in its prior excess tax returns. Respondent has embodied this interpretation of the pertinent sections in his regulations. Regs. 130, sec. 40.464–1. Our examination of the statute convinces us that this regulation is not unreasonable or inconsistent with the statute, and is, therefore, valid. Fawcus Machine Co. v. United States, 282 U.S. 375 [51 S.Ct. 144, 75 L.Ed. 397]." 28 T.C. 123.[2]

■ We, therefore, affirm that part of the decision of the Tax Court sustaining the Commissioner's determination that taxpayer may not utilize the base period

---

**2.** The regulation referred to by the Tax Court provides: " * * * No base period capital addition shall be allowed the acquiring corporation with respect to any corporation a party to the Part II trans-

action (whether the acquiring or component corporation) the monthly excess profits net income of which is computed under section 435(e) and section 462(c) (1) (C) * * *."

capital additions of North Side Bank in computing its excess profits credit, and in assessing a deficiency accordingly.

While it is not material to the determination of the issues here involved, it should be noted that, under the terms of the statute, excess profits tax was terminated December 31, 1953.

The decision of the Tax Court is reversed in part and affirmed in part as set out herein, and this matter is remanded to the Tax Court for a redetermination of the tax deficiencies for the calendar years 1951 and 1952 and such other action as may be required consistent with this opinion.