**E. O. BOOKWALTER, District Director of Internal Revenue, Appellant,**

v.

**HUTCHENS METAL PRODUCTS, INC.,**
Appellee.

No. 16411.

United States Court of Appeals
Eighth Circuit.

June 30, 1960.

Joseph Kovner, Atty., Tax Division, Dept. of Justice, Washington, D. C., for appellant.

Mayte Boylan Hardie, Springfield, Mo., for appellee.

Before GARDNER, WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

The sole question in this case is whether the taxpayer appellee as the surviving corporation in a statutory merger of two corporations on April 30, 1951 is entitled to carry over and deduct from its own income for the taxable year 1951 net operating losses previously sustained for 1950 and that portion of 1951 prior to the merger by the merging corporation, under the provisions of §§ 23(s) and 122(b) (2) (C) of the 1939 Code, 26 U.S.C. (I.R.C.1939) §§ 23(s), 122(b) (2) (C). On the trial of the action brought by the taxpayer for refund of taxes paid on the basis of the commissioner's allegedly erroneous disallowance of the deduction claimed, the District Court held that plaintiff taxpayer was entitled to carry over and deduct the net operating losses sustained by the merging corporation and entered judgment for refund of payment made within the period of the statute of limitations, to wit: for $10,705.21 and interest. 174

F.Supp. 338. The government appeals. It insists that the decision of the Supreme Court in Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924, affirming the decision of this Court which is reported at 8 Cir., 229 F.2d 220, requires dismissal of the action.

As stated by the District Court, the facts were found largely upon a stipulation of forty-one paragraphs included in the record and are to the effect that:

The taxpayer, a Missouri corporation organized in 1926, changed its corporate title from Springfield Auto Works to the presently used Hutchens Metal Products, Inc. in 1946 and in the same year Hutchens Implement Sales Company was incorporated, also under Missouri law. Between October 30, 1946 and April 30, 1951 the two companies were owned and operated as separate business organizations, each making and being taxed upon separate returns. On April 30, 1951 Hutchens Implement Sales Company was merged into the taxpayer pursuant to Missouri law permitting mergers. The taxpayer is referred to as such or as the surviving corporation, the other as the Sales company.

The business of the taxpayer was originally manufacturing and selling farm implements and the primary function and business of the Sales company upon its organization was to market, sell, and create markets for the taxpayer's product.

But in 1947 the taxpayer commenced withdrawing from the manufacturing business and during that year it terminated its manufacturing of gasoline tank semi-trailers and leased the buildings used for that purpose at Springfield, Missouri. In August of 1948 it leased its factory building and equipment at Lamar, Missouri, to a company for ten years and in October of 1948 it leased its remaining manufacturing facilities in Springfield to another company. From that time (about two years and eight months before the merger) it carried on no manufacturing operations from which it obtained income.

On the other hand, the Sales company engaged in selling farm equipment between the time of its organization and May 1, 1949. On that date it took a lease from the taxpayer of that company's manufacturing plant at Lamar, Missouri, that had been taken back from a bankrupt lessee. It also bought the inventory and engineering and design work that went with it. The Sales company conducted manufacturing and sales operations at the leased premises from May 1, 1949 until June 21, 1950 when the Lamar factory was sold to a third party. On the date of the merger, April 30, 1951, the Sales company had sold substantially all its inventory. Its manufacturing activities were terminated in 1950 and on the date of the merger both companies were inactive except as the taxpayer received rentals and capital gains from properties that taxpayer owned. As a result of the manufacturing and sales operations of the Sales company, that company had a net operating loss deduction for 1950 as a carry over of $26,973.28. It had a net operating loss from sales for the portion of 1951 prior to the merger of $1,269.65 so that at the time of the merger its net operating loss deductible by it was $28,242.93. In its income tax return for 1951 the taxpayer deducted the net operating loss of the Sales company and the Commissioner disallowed it. The holding of the District Court was that the taxpayer could carry over and offset against the income it derived from its rentals the losses the merging company sustained in its business of manufacture and sale of farm implements.

The case of Libson Shops, Inc. v. Koehler on which the government relies involved the statutory merger under the laws of Missouri and Illinois of seventeen corporations which had been filing separate income tax returns. The stock of the sixteen merging corporations and the surviving corporation was owned by the same persons in the same proportion. Three of the merging corporations had shown net operating losses prior to the merger (and subsequent to it) and the surviving corporation as taxpayer sought to deduct from its post merger income the amounts of carry-over and deductions of the pre-merger net operating losses of the three corporations. This Court held and the Supreme Court affirmed that under Sections 23(b) and 122 of the Internal Revenue Code of 1939 the taxpayer was not entitled to the deduction.

A fundamental reason why the taxpayer could not have the deductions as shown by both of the opinions is that the income of the surviving corporation against which that corporation sought to offset the loss did not come from the business which had sustained the loss. As stated by the Supreme Court, at page 386 of 353 U.S., at page 993 of 77 S.Ct.:

"The carry-over and carry-back provisions * * * were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years and to strike something like an average taxable income computed over a period longer than one year. There is, however, no indication in their legislative history that these provisions were designed to permit the averaging of the pre-merger losses of one business with the post merger income of some other business which had been operated and taxed separately before the merger. What history there is suggests that Congress primarily was concerned with the fluctuating income of a single business."

In this case the loss the Sales company sustained was in its manufacturing and selling business and the income the taxpayer received was from its rentals and capital gains from its properties. There was no continuing of a single business that lost money in one year and made money in another, but the taxpayer's attempt here is to pool separate enterprises and level the ups and downs of their economic fortunes. There could not have been any deduction under the statute in the absence of the

merger because the business carried on by the Sales company in which it suffered losses was never continued to the point where profits were earned that could be offset and freed from income tax by deductions. The Sales company was out of business when it was merged. Permitting the deduction to the surviving corporation would amount to granting the taxpayer a "windfall" solely because of the merger.

The federal income tax returns made by the two corporations show their respective sources of income as follows:

| 1950 | Merging Company | Taxpayer |
|---|---|---|
| Rent ..............$ | 0 | $37,968.00 |
| Long-term capital gain .............. | 0 | 8,431.01 |
| Gross sales ........ | 68,243.59 | 0 |

| 1951 | Merging Company (Jan. 1—May 15) | Taxpayer Entire year |
|---|---|---|
| Rent .............. | 0 | 36,912.34 |
| Long term capita gain .............. | 0 | 67,213.76 |
| Gross sales ........ | 854.39 | 0 |

It is clear from the record that the Sales company suffered its losses in manufacturing and selling which ceased before the merger and the taxpayer's income was from rentals and capital gains continuing to the time of trial, to which the Sales company made no contribution. In that respect also the situation here is stronger for the Government than it was in the Libson case. In that case the three corporations with losses continued to do business after the merger as before. They brought at least a hope of future profit, although actually they lost and contributed nothing to the income of the surviving corporation in the tax year involved. Here the merging corporation brought nothing to the survivor.

It is contended for appellee that this case should be distinguished from Libson on the grounds that the business of the surviving corporation here was "identical with the merging company." In support it points out that "in the beginning the surviving corporation engaged in manufacturing and selling," "the two corporations were closely related," "the stockholders were substantially identical," and "in general the officers and directors of each were substantially identical," and that "the two corporations were economically integrated business-wise."

We do not find any difference in principle between Libson and this case that would justify different decisions.

Certainly the merging corporation here was organized in the first instance to carry on a sales business distinct and separate from the manufacturing business and it did so operate and made its returns accordingly. The identity of the stockholders, directors, and managers of the two corporations was more complete in Libson than shown to be here. Here a bank and "trusted employee" have a substantial interest with the "family" owners. The various corporations in Libson were "closely related," the top management being the same in all. As to "economic integration [here] of the two companies business-wise," the stipulation of facts upon which the case was tried specifically states "neither corporation, prior to the merger was either

parent or subsidiary of the other" and at all times after the organization of the merging corporation, both corporations "chose to file separate income tax returns rather than to pool their income and losses by filing a consolidated return." " * * * [T]hey elected to forego [the opportunity consolidated returns would have afforded] when they chose not to file a consolidated return." Libson, 353 U.S. at page 388, 77 S.Ct. at page 994.

Penton v. United States, 6 Cir., 259 F.2d 536 is cited as authority for the proposition that continuity of business is not destroyed by temporary cessations of certain types of business activity. There a tavern keeper who had bought a retail liquor store and carried it on for three years failed to obtain a renewal of the license one year and was obliged to cease retail sales, while he was endeavoring to make the necessary showing of good character and obtain renewal. During the one year he paid rent and charges for telephone and utilities, maintained an inventory, carried insurance on the stock, retained bookkeeper's services, returned quantities of liquor to whosesale houses securing refund and suffering some loss and paid a guard regular charges to guard the premises and goods. On obtaining his license he resumed full operation of the business. It was there held by a divided court that the business in which he suffered a loss during the year was a continuing one notwithstanding the temporary interruption of the retail selling part of it. But we see no analogy helpful to appellee. The surviving corporation here parted with its manufacturing facilities more than two years before the merger without any showing of intention to resume, and it did not resume. The merging corporation had practically no assets or business or income at the time of merger.

Evidence was taken in the trial court concerning activities of the surviving corporation after the merger when it appeared some efforts were being made to perfect, demonstrate, and patent a plow but there was no evidence that any income was obtained by the taxpayer from any business activities of the merging company. The trial court found as the evidence compelled that "the net earnings from which the carry-over was deducted were derived from certain long term capital gains and rental income" from the surviving corporation's properties. None was attributable to the merging company.

The opinions in Libson discuss in the text and foot notes the relevant prior decisions. Decisions subsequent to and in accord with Libson are cited as follows: Mill Ridge Coal Co. v. Patterson, 5 Cir., 264 F.2d 713, certiorari denied 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63, petition for rehearing denied 363 U.S. 832, 80 S.Ct. 1595, 4 L.Ed.2d 1526; Patten Fine Papers, Inc. v. Commissioner of Internal Revenue, 7 Cir., 249 F.2d 776, certiorari denied 361 U.S. 816, petition for rehearing filed; Dumont-Airplane and Marine Instruments, Inc. v. Commissioner, 28 T.C. 1308; Commissioner of Internal Revenue v. British Motor Car Distributors, Ltd., 9 Cir., 278 F.2d 392.

In summary we think the decisions in Libson settle that the carry-over allowed by 26 U.S.C. (I.R.C.1939) § 122 (b) (2) (C) was for the benefit of the taxpayer referred to, was not intended to be transferable to some one other than the original taxpayer who earned taxable income without carry-over or carry-back losses and in order to obtain credit for loss carry-over against taxable income the taxpayer claiming it must establish that it was the same taxpayer which suffered the net operating loss. That interpretation accords with the intent of Congress and appears capable of fairly uniform application. Applied here it prohibits the plaintiff taxpayer corporation from avoiding the tax on the income it received from its rentals and capital gains by offsetting the losses another corporation sustained in its business of manufacturing and selling.

Reversed and remanded with direction for judgment in accord herewith.