## WESTINGHOUSE AIR BRAKE COMPANY
### v.
### The UNITED STATES.
### No. 81–61.

United States Court of Claims.
March 12, 1965.

Carl Cherin, Pittsburgh, Pa., for the plaintiff, Numa L. Smith, Jr., Washington, D. C., Eckert, Seamans & Cherin, Pittsburgh, Pa., and Miller & Chevalier, Washington, D. C., of counsel.

Philip R. Miller, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant, C. Moxley Featherston, Lyle M. Turner, and J. Mitchell Reese, Jr., Washington, D. C., on the brief.

Before COWEN, Chief Judge, and LARAMORE, DAVIS and COLLINS, Judges.

LARAMORE, Judge.

This is an action to recover $187,771.92 of excess profits tax and interest paid for the calendar year 1951. The question presented in its broadest context is whether taxpayer is entitled to offset against its 1951 excess profits net income any part of the 1950 unused excess profits credit of its former parent, which was merged into taxpayer on July 5, 1951. The government argues against the survival of this tax attribute of the merged corporation on two grounds. It first contends that the merged corporation for the short taxable year January 1 through July 4, 1951, as a result of the

operation of section 432(c) (2),[1] absorbed the entire 1950 unused credit. In the alternative, assuming that the 1950 unused credit was not completely exhausted, the government argues that the rationale of Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957), prevents the surviving corporation from utilizing any part of this unused credit, since the 'business unit which had available the unused excess profits credit carryover had no adjusted excess profits net income against which to apply the unused credit. We find it unnecessary to pass on the government's first.contention since even if the unused credit was not completely exhausted, we have concluded that the rationale of Libson Shops prevents the result urged by taxpayer for the tax year in question.[2]

The facts in this case having been stipulated, the only issues in dispute are those of law. Taxpayer (whose corporate name was formerly The Union Switch. and Signal Company) was the surviving company in a merger with its parent (The Westinghouse Air Brake Company) on July 5, 1951. Prior to the merger, taxpayer was engaged in the business of manufacturing and distributing railway switch and signal equipment, while the parent manufactured and sold railroad air brakes. After the merger, the business of the parent was conducted by taxpayer as its Air Brake Division in substantially the same manner as conducted prior to the merger. Likewise, the former business of the taxpayer was conducted by it as its Union Switch and Signal Division. The operation of the two divisions was not physically integrated following the merger, and separate books were kept for the two divisions enabling a breakdown of income and expenses.

The parties have stipulated that there were valid business reasons for such a merger. Moreover, prior to the merger the parent owned 99.98 percent of the outstanding stock of the taxpayer, which ownership had existed for a number of years.

The taxpayer and its parent, both of which reported their income on the basis of the calendar year, had unused excess profits credits for the taxable year 1950 in the amounts of $73,855.64 and $1,310,-233.39, respectively. As a result of the merger, the parent (the absorbed corporation) was required to file an excess profits tax return for the short taxable year beginning January 1, 1951, and ending on the day prior to the merger, July 4, 1951. In arriving at its excess profits tax for the short period the parent, as permitted by law, elected to compute the tax due under section 433(a) (2) (B).[3] Under that section, the excess profits net income for the 12 months preceding the merger was used-for purposes of computing the tax for the short taxable year. From this excess profits net income, the parent's excess profits credit for 1951 and its unused excess profits credit carryover from 1950 were deducted and a tentative excess profits tax computed on the difference. Pursuant to that section, the tentative excess profits tax so computed was then reduced by the ratio of the excess profits net income for the short taxable year to the excess profits net income for the preceding 12-month period. The parent applied this same ratio to the unused excess profits credit carryover from 1950 in order to determine the amount thereof used in the short taxable year. The amount so used was then subtracted from the total unused credit for 1950 in order to determine the amount which taxpayer claims can be available as a carryover for subsequent years. The

---

1. Internal Revenue Code of 1939, § 432 (e) (2).

2. We do not pass on the availability of such an unused credit for future years. We are only concerned with the propriety

of such a deduction for taxpayer's calendar year 1951.

3. Internal Revenue Code of 1939, § 433(a) (2). (B).

following schedules show the manner in which the actual computations were made under section 433(a) (2) (B) and the manner in which taxpayer computed the amount of the 1950 unused credit which it claims is still available as a carryover.

### Schedule A

1.  Excess profits net income, 7/5/50 through 7/4/51 .. $18,176,815.07
2.  Less:
    a.  Excess profits credit— 1951 .................... $14,399,408.52
    b.  Unused excess profits credit carryover from 1950 ....    1,310,233.39    15,709,641.91
3.  Adjusted excess profits net income (line 1 minus line 2) .\...............................    2,467,173.16
4.  Tentative excess profits tax at 30% ($2,467,173.16 x 30%) ......................................    740,151.95
5.  Excess profits net income for short year, 1/1/51 through 7/4/51 ..............................    11,224,894.69
6.  Ratio, line 5 to line 1 ........... .617539136
7.  Tax liability: ($740,151.95 x .617539136) .......    457,072.80

### Schedule B

1.  Total unused excess profits credit for 1950 ......    $ 1,310,233.39
2.  Percentage used in computing tax for short year ending 7/4/51 from tax for full year 7/5/50 through 7/4/51 ...................... .617539136
3.  Amount of unused excess profits credit for 1950 claimed to have been used for short year ending 7/4/51 (line 1 times line 2) ....................    809,120.39
4.  Amount of unused excess profits credit claimed to be available as a carryover (line 1 less line 3) ....    501,113.00

Taxpayer, on its excess profits tax return for its taxable year ending December 31 ,1951, deducted that portion of the unused excess profits carryover of its parent from the taxable year ending December 31, 1950, which it claimed was not used in the short taxable year of the parent. This deduction was disallowed by the Internal Revenue Service and the resulting deficiency was paid. Taxpayer filed a timely claim for refund which claim was formally disallowed and this suit followed.

■ As stated earlier, the government challenges the deduction on two grounds. First, it argues that a literal reading of section 432(c) (2), under which the amount available as an unused excess profits credit carryover can be computed, explicitly denies to taxpayer the carryover it seeks in this case.[4] Al-

4. The Government argues that the literal language of section 432(c) (2) of the 1939 Code provides that the amount of carryover, if any, to the next succeeding taxable year after this "first succeeding taxable year" shall be the excess, if any, of the amount of the unused credit over the "adjusted excess profits net income" of the first succeeding taxable year, computed without taking into account the unused credit. Then the government points out that the "unused excess prof-

ternatively, the government makes the contention, which we think is dispositive of this case, that assuming that section 432(c) (2) does authorize a carryover to the next succeeding taxable year after the short taxable year ending July 4, 1951, the Supreme Court in Libson Shops, Inc. v. Koehler, supra, imposed an additional requirement which taxpayer here has failed to meet before it as the successor corporation can utilize the carryover. The government contends that Libson Shops requires that in the post reorganization year in which the successor corporation (taxpayer) seeks to utilize the carryover, the business unit which produced the loss (or unused credit) must have income (or adjusted excess profits net income) against which to offset the loss.[5] It then points out that this requirement has not been met here, because during the taxable year in issue (taxpayer's calendar year 1951) the Air Brake Division, the business which sustained the unused credit in 1950, had no adjusted excess profits net income against which to apply any carryover available to it.[6]

On the other hand, taxpayer urges that Libson Shops merely required us to determine whether the taxpayer would have been able to use the carryover if there had been no merger. In other words, *but for the merger,* the absorbed corporation would have been entitled to the carryover. Taxpayer then points out that if there had been no merger on July 5, 1951, and if the parent corporation had continued to file its returns on a calendar year basis, its total excess profits net income for 1951 would have been $16,295,270.75, and its total excess profits credit for this calendar year would have been $14,399,408.52. The difference would have been sufficient to permit full use in 1951 of the 1950 unused excess profits credit. Consequently, taxpayer concludes that under the "but for test" of Libson Shops it is entitled to use the unused excess profits credit carryover of the absorbed corporation.

In response to the government's contention that taxpayer is prevented by Libson Shops from using the unused credit because the business unit which acquired the unused credit did not have

---

its credit" for 1950 was $1,310,233.39. The "adjusted excess profits net income" determined as prescribed by the statute in computing the excess profits tax liability of taxpayer's former parent for the short taxable year was $3,777,406.55 before taking the 1950 unused credit into account. Therefore, the government concludes, the entire unused credit of about $1.31 million was absorbed by the adjusted excess profits net income of about $3.77 million for the first succeeding taxable year, leaving nothing to carry over to any later taxable year. Taxpayer argues that although the literal language of that section appears to require the result urged by the government, it has only effectively utilized about 61 percent of the unused credit. It argues that the $3.77 million figure is not the *actual* adjusted excess profits net income for the short taxable year, but merely it is used as an intermediate step in the calculation of the tax for the short taxable year.

5. We note that the government does not make the contention based on section 432(e) (2) and Libson Shops that the only "taxpayer" authorized to carry over the unused credit of a preceding taxable

year is "the" taxpayer who originally became entitled to the credit, and that where separate taxpayers with separate businesses are consolidated, the post consolidation business is not "substantially the same business" as that previously conducted by any one component separately, or even by all components collectively. See Levine & Petta, Libson Shops: A Study in Semantics, 36 Taxes 445 (1958) where the authors construed Libson's continuity of business requirement in this manner. See also the Service's argument in Old National Bank v. Commissioner, 256 F.2d 639 (7th Cir. 1958). Nor does the government challenge the deduction on the grounds that the business unit which acquired the credit is not substantially the same business unit which operates as a division after the merger. See Note, Net Operating Loss Carryovers and Corporate Adjustments, 69 Yale L.J. 1201, 1218 (1960).

6. During the period July 5 through December 31, 1951, the absorbed parent had excess profits net income of $5,070,376.06 and an excess profits credit attributable to it of $7,190,541.36.

postmerger *adjusted* excess profits net income, taxpayer argues that the "matching" is to be done against the business unit's *excess profits net income* and not against the *adjusted* excess profits net income. In support of this contention taxpayer relies on Old National Bank v. Commissioner, 256 F.2d 639 (7th Cir. 1960) and Rev.Rul. 59–395, 1959–2 Cum. Bull. 775.

Although we think that Libson Shops is not completely dispositive of this case, the broad grounds upon which the Court rested its decision requires us to adopt the result urged by the government. We also recognize that to some extent, as explained below, we may possibly be departing from the precise wording of the Seventh Circuit's opinion in Old National Bank.

In order to explain the basis of our decision, a discussion of pre-Libson Shops cases is necessary.[7] Prior to Libson Shops the Internal Revenue Service took the position that the statutory language of the loss carryover and excess profits credit provisions only permitted *the same taxpayer* which acquired the tax attribute to use it in subsequent years. In other words, the statutory phrase "the taxpayer" was the corporate entity and not its shareholders. This entity theory received the imprimatur of the Supreme Court in New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1935). There a corporation which

had re-incorporated without any change in the capital structure, ownership, or business activity was not permitted to apply its predecessor's losses against its own income. The Supreme Court disallowed the deduction because according to the statutory provision, the corporation which sought to apply the losses was not "the taxpayer" which had sustained the loss, since the two corporations were "not identical but distinct." (292 U.S. at 441, 54 S.Ct. 788.) The New Colonial "entity" concept remained inviolate until the Second Circuit in Stanton Brewery, Inc. v. Commissioner, 176 F.2d 573 (2d Cir. 1949) permitted inheritance of an absorbed corporation's tax history when the combination was effected by statutory merger which transferred by "operation of law" the rights and obligations of the disappearing corporation. This factor, the Second Circuit felt, distinguished New Colonial since there the transfer of assets was on a voluntary basis. The Stanton rationale was applied by First Circuit in Newmarket Manufacturing Co. v. United States,[8] by the Ninth Circuit in E. & J. Gallo Winery v. Commissioner,[9] and by us in Koppers Co. v. United States.[10]

The law in this troubled area was in this posture when Libson Shops reached the Supreme Court. There the Commissioner argued for the disallowance of the loss carryover deduction on the basis that the entity theory of New

---

7. Moreover, our discussion cannot be limited to cases dealing with excess profits credit carryovers since cases involving loss carryovers are persuasive in interpreting the excess profits carryover provisions by virtue of the comparable operation of both tax attributes and the equivalence of the statutory language. In Libson Shops where a loss carryover was at issue, the Court approved and disapproved excess profits tax cases without distinction.

8. 233 F.2d 493 (1st Cir. 1956), cert. denied, 353 U.S. 983, 77 S.Ct. 1279, 1 L.Ed. 2d 1142 (1957). The Court allowed a loss carryback after a profitable corporation had re-incorporated in a different state through a statutory merger with a wholly-owned subsidiary.

9. 227 F.2d 699 (9th Cir. 1955). The tax attribute in issue was an unused excess profits credit resulting from a statutory merger of two unrelated corporations.

10. 134 F.Supp. 290, 133 Ct.Cl. 22 (1955), cert. denied, 353 U.S. 983, 77 S.Ct. 1279, 1 L.Ed.2d 1142 (1957). The case involved statutory merger of related corporations which had previously filed consolidated returns. Although we based our decisions on the Stanton rationale, the entity theory of Colonial could have also been applied since the affiliated group, by filing consolidated returns, was in effect the same "taxable entity" before the merger as after.

Colonial was still viable and that Libson Shops could not claim the losses of a different tax entity.[11] Alternatively, the government contended that the taxpayer's business was substantially different from that of its predecessors, and to allow the deduction would be violative of the congressional intent embodied in the carryover provisions. The taxpayer relied on Stanton, Gallo, Koppers and Newmarket to support its theory that a carryover survives a statutory merger. The Court did not discuss the apparent conflict between the entity theory of New Colonial and the Stanton "operation of law" cases, since it found the government's alternative argument "dispositive" (353 U.S. at 385, 77 S.Ct. 990). The Court agreed with the government that "the carry-over privilege is not available unless there is a continuity of business enterprise * * *" (Id. at 386, 77 S. Ct. at 992), since it found this requirement in accord with the legislative history of the carryover provisions. The opinion concluded with the statement that "petitioner is not entitled to a carry-over since the income against which

the offset is claimed was not produced by substantially the same business which incurred the losses." The Court seemed to accept the Stanton, Newmarket and Koppers decisions on the basis that in those cases the distinction between a "single business" and "several businesses" was recognized.[12] Had the Court stopped there, there would be no basis for taxpayer's argument of a "but for test." However, the Court's further explanation of Newmarket asked whether the carryback could have been utilized if there had been no merger.[13] The Court seemed to say that the availability of carryovers should not be affected by the occurrence of a merger provided that the continuity of business test is met. In postulating this test, the Court markedly departs from the formalism of the "entity" theory requirement of "the same taxpayer" and stresses the business unit concept contained in the continuity of business test. This in turn requires that the entire enterprise of the resultant corporation be divided as if the absorbed corporation had continued its separate existence.[14] Before a carryover is

11. The taxpayer in Libson Shops was a corporation into which 16 other corporations had been merged pursuant to state statute. Prior to the merger, the surviving corporation had provided management services to the 16 companies, each of which operated a single retail store selling women's clothing. After the merger, the taxpayer carried on the operations of all stores. The dispute arose when it attempted to carry forward the pre-merger losses of three of the sales corporations. The pre-merger loss stores continued to be unprofitable; however, the rest had post-merger income against which the pre-merger losses could be offset.

12. Gallo was deemed "inconclusive * * * since the opinion [did] not disclose whether or not a continuing enterprise was involved." 353 U.S. at 387, 77 S.Ct. at 993.

13. Had the corporation in Newmarket not reincorporated in Delaware, it could have offset its current losses against the income of prior years. On the other hand, if the Libson merger had not taken place, the losses of the three corporations could

not have been offset against the subsequent income of the others, since the separate corporations had not filed consolidated returns during the loss years (Id. at 388, 77 S.Ct. 990). The Court's reference to the possibility of filing a consolidated return would seem an erroneous statement, since consolidated returns could under the statute be filed only where a parent corporation owned a chain of subsidiaries and not where several corporations were owned directly by the same group of individuals. In the Libson Shops case the latter situation, so-called "brother-sister" corporations, was present. See Editors footnote, Surrey & Warren, Federal Income Taxation, p. 1586 (1960 Ed.).

14. We recognize that this requirement of separating the resultant corporation's activities into artificial entities creates numerous problems of accounting. See Julius Garfinckel & Co. v. Commissioner, 335 F.2d 744, 748 (2d Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 651 (1965). In Rev.Rul. 59–395, 1959–2 Cum.Bull. 475, 479, the Commissioner took the position that any carryover deduction after a merger or consolidation is disal-

allowed, it must be demonstrated that the carryover is being applied to offset income from the submerged corporation which acquired the pre-merger tax attribute. Moreover, the pre-merger business activities of the business unit which acquired the tax attribute must remain substantially the same after the merger.[15]

Taxpayer here argues that it has met all these requirements since the business unit which acquired the pre-merger tax attribute not only has continued the same business activity but also has post-merger excess profits net income against which it could apply the unused credit. The Seventh Circuit in Old National Bank case found this factor to be determinative in allowing the credit.[16] However, we think that the court should have gone one step further in determining whether the unused credit carryover was offsetting post-merger income of "substantially the same business." We say this because even if the business unit which acquired the pre-merger unused credit had post-merger excess profits net income, it does not necessarily always follow that the unused credit would offset this income. This is due to the fact that the absorbed business unit acquires a new excess profits credit for the remainder of the tax year, and if the credit is large enough it can offset the entire excess profits net income for that period. The end result would be that the unused

excess profits credit carryover would be used to offset income not of the business unit which acquired it but would be applied against excess profits income of the other components. To allow this, we think, would be contrary to the continuity of business test of Libson Shops and do violence to the congressional intent of the carryover provisions since this would "permit the averaging of pre-merger losses [pre-merger credits] of one business with post-merger income of some other business which had been previously operated and taxed separately before the merger." (Libson Shops, Inc. v. Koehler, supra, at 386–387, 77 S.Ct. at 993.)

In the instant case the absorbed business unit had post-merger excess profits net income of $5,070,376.06 and an excess profits credit attributable to it of $7,190,541.36 for the same period. To allow the carryover of the unused credit which taxpayer claims would permit the utilization of pre-merger unused credits of one business to offset post-merger income of another business, a result which is contrary to our interpretation of Libson Shops.

We hold that taxpayer is not entitled to offset against its 1951 excess profits net income any part of the 1950 unused excess profits credit of its former parent. Consequently, taxpayer is not entitled to recover, and its petition is dismissed.

---

lowed under the 1939 Code unless the records of the resulting corporation are so maintained as to enable IRS to make a determination as to what part of the profits of the merged corporation is attributable to the assets which incurred the pre-merger losses. However, we are not confronted with this problem here since the books and records of taxpayer's divisions were kept separately.

15. It has been stipulated here that the business of the absorbed parent has remained substantially the same after the merger.

16. It is not clear whether the Court was referring to excess profits net income or to adjusted excess profits net income. From the opinion we could not tell if the credit was only offsetting the income of the submerged corporation which had acquired the credit.