508 P.2d 107

### STATE TAX COMMISSION of Arizona et al., Appellants,

v.

### OLIVER'S LAUNDRY & DRY CLEANING CO., an Arizona corporation, Appellee.

**No. 2 CA–CIV 1225.**

Court of Appeals of Arizona,
Division 2.

March 22, 1973.

Gary K. Nelson, Atty. Gen. by Mary Z. Chandler, Asst. Atty. Gen., Tucson, for appellants.

Robertson, Molloy, Fickett & Jones, P. C. by John J. Donahue, Jr., Tucson, for appellee.

HATHAWAY, Chief Judge.

Oliver's Laundry and Dry Cleaning Co., a corporation, filed a complaint in the Superior Court of Pima County, appealing the Arizona State Tax Commission's denial of certain deductions on Arizona State Income Tax returns. Oliver's claimed that as the surviving corporation of a merger, it was entitled to carry over and deduct the losses incurred by the merging corporation because the surviving corporation was the identical taxpayer and entitled to the deduction under A.R.S. § 43–123 subsec. s (set forth in detail later in this opinion).

The matter was tried to the court sitting without a jury on stipulated facts. Judgment was granted to Oliver's, hence this appeal. The single question presented for review is whether a corporation surviving from a merger of a sister and itself, may carry over and deduct pre-merger net operating losses of the merging corporation from the post-merger income of the surviving corporation.

Oliver's Laundry & Dry Cleaning, a corporation, was owned and operated by Robert J. and Patricia Brooks and was engaged exclusively in a general and commercial laundry and dry cleaning business since 1956. On July 18, 1963, the Brooks purchased another laundry and dry cleaning business and incorporated it under the name of New Cascade, Inc. New Cascade continued its existing retail and commercial laundering and dry cleaning business under its own name exactly as before its purchase, except that the cleaning plant was sold and the soiled clothes were processed for a fee by Oliver's. Oliver's also processed soiled clothes for other retail firms which did not own processing plants. Oliver's provided and New Cascade paid for office and administrative services. New Cascade filed income tax returns as a subchapter "S" corporation, kept its own separate accounts, represented itself as a single corporation for all purposes, and remained a distinct, separate legal entity from Oliver's. New Cascade operated at a loss during the entire period of its existence, and wound up with a $49,111.50 loss on its books.

On September 28, 1964, the Brooks donated all their stock in New Cascade to Oliver's and the corporations merged. After the merger there was a reduction in the staff and sales force of the combined businesses. New Cascade did not continue in business in any form and it was not ac-

counted. for as a separate division of Oliver's. In a deposition of Robert J. Brooks, he stated that if New Cascade would have continued in business it would have continued to be a losing proposition.

Oliver's Laundry and Dry Cleaning later attempted to reduce its income on its Arizona income tax return for the post-merger fiscal years ending October 1, 1966 and 1967 by off-setting New Cascade's pre-merger losses against Oliver's post-merger income. The State Tax Commission disallowed the deductions. Oliver's appealed the disallowance to Pima County Superior Court and was granted relief on the basis that a "de facto merger" had occurred between New Cascade and Oliver's on July 18, 1963, and that the $49,111.50 losses disallowed by the defendants were incurred subsequent to the "de facto merger" by the taxpayer Oliver's Laundry & Dry Cleaning Co. The court found a continuity of business enterprise from the loss period through the subsequent profitable period, which entitled the plaintiffs to deduct the operating losses against the subsequently earned profits. A.R.S. § 43–123, subsec. s, the statute relied upon for the deduction, provides:

"(s) Net operating loss deduction. In computing net income there shall be allowed as a deduction a net operating loss deduction computed under this subsection.

\*   \*   \*   \*   \*   \*

(2) Amount of carry-back and carry-over

(A) Net operating loss carry-back. If for any taxable year beginning after December 31, 1954, *the taxpayer* has a net operating loss, such net operating loss shall be a net operating loss carry-back for the preceding taxable year.

(B) Net operating loss carry-over. If for any taxable year beginning after De-

cember 31, 1953, *the taxpayer* has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the five succeeding taxable years, except that the carry-over in the case of each such succeeding taxable year (other than the first succeeding taxable year) shall be the excess, if any, of the amount of such net operating loss over the sum of the net income for each of the intervening years computed:" (Emphasis supplied)

The substance of A.R.S. § 43–123, subsec. s is comparable to § 122 of the 1939 Internal Revenue Code with reference to the problem presented. Our Supreme Court has stated, where the Arizona Income Tax Act is similar to the Federal Income Tax Act, the decisions of the federal courts will be very persuasive in determining how the Arizona Income Tax Act should be construed. Arizona State Tax Commission v. Kieckhefer, 67 Ariz. 102,. 191 P.2d 729 (1948);[1] Arizona State Tax Commission v. Fagerberg, 59 Ariz. 29, 122 P.2d 212 (1942).

■ We are unable to find support in the record for the trial court's determination that a "de facto" merger existed as of July 18, 1963, between New Cascade and Oliver's thus entitling Oliver's to the loss carry-over deduction. We find no Arizona authority dealing with de facto mergers, although Arizona recognizes the doctrine of "de facto" corporations in general. Rice v. Sanger Bros., 27 Ariz. 15, 229 P.. 397 (1924); Sawyer v. Pabst Brewing Co., 22 Ariz. 384, 198 P. 118 (1921). It has been held that if there is legislative authority for a consolidation, an attempt in good faith to consolidate under the statutes, a colorable compliance with the statute, and the exercise or assumption of powers as a consolidated corporation, consolidation de facto occurs. Provident Se--

---

1. Section 122 of I.R.C. of 1939 provides in pertinent part:

"If for any taxable year beginning after December 31, 1947, and before January 1, 1950, *the taxpayer* has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the three succeeding taxable years. \* \* \*" (Emphasis supplied) § 122 . (b)(2)(C), 64 Stat. 937, 938, 65 Stat. 505, 26 U.S.C. § 122(b)(2)(C), 26 U.S. C.A. § 122(b)(2)(C).

curity Life Ins. Co. v. Gorsuch, 323 F.2d 839 (1963); 15 Fletcher Cyclopedia Corp. § 7155 (Perm.Ed.1961). In the instant case no evidence appears supporting a "de facto" merger since there was no attempt to consolidate until September 28, 1964.

Neither the Arizona statute nor § 122 of the Internal Revenue Code of 1939 specifically provides for a carry over upon merger. The Supreme Court in Libson Shops v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957), however stated that in certain situations, the surviving corporation of a merger would be entitled to such a carry over, although the court found there that the surviving corporation was not entitled to the carry over. In *Libson,* a number of individuals owned the stock of seventeen corporations. One of the corporations provided management services for the remaining sixteen each of which separately operated, engaged in the retail sale of women's apparel. Each corporation filed a separate income tax return. In a tax free reorganization, the sixteen operating corporations, three of which had experienced losses and thirteen of which had been profitable, merged into the management corporation. The commissioner disallowed the surviving corporations' attempt to carry over and offset the pre-merger losses of the three unprofitable corporations against the post-merger gains of the other merged corporations. The Supreme Court found it unnecessary to decide the Commissioner's primary contention that the surviving corporation was not the same "taxpayer" as that which had sustained the losses in the prior years.[2] Instead, the court disallowed the deduction on the ground that the losses and the profits from

which they were sought to be deducted were not produced by "substantially the same business." Thus the court chose to disregard a straight legal entity approach to the problem and approached the problem upon an economic basis, i. e., was it substantially the same business? Frank IX & Sons Virginia Corp. v. Commissioner of Internal Revenue, 375 F.2d 867 (3 Cir., 1967).

Appellee argues that *Libson Shops* is inapplicable because of a substantial factual difference and because of the difference between the law of Arizona and the Federal Revenue Code. Appellee's contention for the difference in law is premised upon the following quote from *Libson:*

"If petitioner is permitted to take a carry-over, the 16 sales businesses have acquired by merger an opportunity that they elected to forego when they chose not to file a consolidated return." 353 U.S. at 388, 77 S.Ct. at 994, 1 L.Ed.2d at 929.

Appellee argues that the foregoing quote points out that under the Internal Revenue Code of 1939, sister corporations had a right to file consolidated returns whereas in Arizona no such right exists. Appellee further argues that the quote sets forth the rationale for the holding in *Libson* and consequently *Libson* is not applicable under Arizona law. We disagree with appellee's contention that *Libson* was decided on the basis of the merging corporations' ability to file consolidated returns. On the contrary we have found abundant authority interpreting *Libson* otherwise. *See,* Libson Shops—An Argument Against Application under 1954 Code, 13 Tax Law Rev. 163.[3]

2. § 122(b)(2)(C) of the 1939 Code authorized a net operating loss carry over for three years "if for any taxable year beginning after December 31, 1947 and before January 1, 1950 *the taxpayer* has a net operating loss."

3. In this article the author, when referring to the above quote from *Libson* stated: "It is submitted, however, that the Supreme Court did not and does not need to reply upon the apparently erroneous argument that the failure to file con-

solidated returns by the management company and the sales corporation thereby precludes the surviving corporation from having available at a loss carry-over net operating losses incurred by three of the sales corporations. The decision of the Supreme Court is only weakened by this statement, and its elimination would in no way undermine the primary reasoning of the Court as set forth above." 13 Tax Law Rev. at 173.

Appellee also contends that *Libson* is factually distinguishable, observing that in *Libson* the taxpayer company was engaged in the *management* of retail dress outlets and the merged companies were involved only in the selling aspects of the dress business, whereas New Cascade and Oliver were both engaged in the same type of business. In support of this proposition appellee quotes from Westinghouse Air Brake Co. v. United States, 342 F.2d 68, 169 Ct.Cl. 968 (1965) where the court interpreting the thrust of *Libson* stated:

"The Court seemed to say that the availability of carryovers should not be affected by the occurrence of a merger provided that the continuity of business test is met. In postulating this test, the Court markedly departs from the formalism of the 'entity' theory requirement of 'the same taxpayer' and stresses the business unit concept contained in the continuity of business test." 342 F.2d 68 at 73 (1965).

The appellee interprets this language to mean that if the post-merger business is of the same type as the business of the pre-merged corporations, then the surviving corporation is entitled to the carry over.[4] We disagree with the interpretation of the above passage in *Westinghouse,* and we are of the opinion that *Libson* is applicable and dispositive of the case *sub judice.*

The court in *Libson* stating that the controversy centered upon the definition of "taxpayer," however, disregarded the entity concept and based its decision on a "continuity of business enterprise" theory, explaining that such rationale was in accord with legislative history. Specifically, with respect to history the court noted:

"The requirement of a continuity of business enterprise as applied to this case is in accord with the legislative history of the carry-over and carry-back provisions. Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year. There is, however, no indication in their legislative history that these provisions were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger. What history there is suggests that Congress primarily was concerned with the fluctuating income of a single business." 353 U.S. at 388, 77 S.Ct. at 993 (footnote citations omitted).

None of the foregoing language in *Libson* would appear to be concerned with whether the post-merger business was of the same type as the previous business, instead it would appear that the concern was with the continuity of a specific business, regardless of the form or name this business undertakes at different times.

In applying the "continuity of business enterprise test" the *Libson* court noted the following:

"Petitioner is attempting to carry over the pre-merger losses of three business units which continued to have losses after the merger. *Had there been no merger,* these businesses would have had no opportunity to carry over their losses." 353 U.S. at 388, 77 S.Ct. at 994.

■■ This language has been interpreted to mean that a carry over should only be allowed in the situations where the pre-merger business unit sustaining the loss is also the same business unit against which the carry over is sought to be off-set. In other words, the protection is only for a particular business regardless of the legal form. Only the same business which in-

4. Appellee cites Associated Machines v. Commissioner of Internal Revenue, 403 F.2d 622, (9 Cir. 1968) as authority for allowing the carry over in a situation as the one before us. In that case the court was relying on a statute enacted in the 1954 Internal Revenue Code for which there is no Arizona counterpart.

curred the loss may carry it over. A corporation which sustains a loss may not merge with another corporation for purpose of allowing the profitable corporation to benefit from the losses of the unprofitable. If a merger is effectuated, the loss may be carried over only to the extent that the losses being used to offset the subsequent gains are from the same business unit. Frank IX & Sons v. Commissioner of Internal Revenue, *supra; Lisbon, supra;* Westinghouse Air Brake v. United States, *supra;* Bookwalter v. Hutchens Metal Products, Inc., 281 F.2d 174 (8 Cir. 1960).

■■ In the case before us, the owners of the respective corporations chose to incorporate their business for various reasons, i. e., limited liability as to each corporation, tax considerations and a possible multitude of other reasons. In the instant case, Mr. Brooks stated in his deposition that if New Cascade would have continued in business it would have continued to be a losing proposition. This would seem to indicate that but for the merger, New Cascade would not have been able to benefit from the carry over, since this business unit would not have had gains against which to off-set losses. The "continuity of business test" requires that where loss corporation and gain corporation are merged, pre-merger losses may be off-set against post-merger gains only to the extent that business which was previously operating a loss is now operating at profit. Garfinckel & Co. v. Commissioner of Internal Revenue, 335 F.2d 744 (2nd Cir. 1964); Foremost Dairies, Inc. v. Tomlinson, 238 F. Supp. 258 (D.C.1963); Bookwalter v. Hutchens, *supra;* 63–2 U.S. Tax Case 89568.

We conclude that New Cascade having sustained pre-merger losses may not carry them over to post-merger gains attributable to a different business unit.

Reversed.

HOWARD, J., and RUSKIN LINES, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge RUSKIN LINES was called to sit in his stead and participate in the determination of this decision.